312 F.3d 1148
 Robert CUNNINGHAM; Armand Soly, Betty Soly, in their individual capacities and as successors in interest to their deceased son, Daniel Soly, and in their capacities as representatives of the classes described fully hereinbelow; Alpha Doe, Beta Doe, in their capacity as a representative of the class described fully hereinbelow; Alfredo Olivas, Harold Bridges, B.K.
Williams, in their individual capacities and in their capacities as representatives of the classes described fully hereinbelow, Plaintiffs-Appellants,
v.
Daryl GATES; Willie Williams; Tom Bradley; Richard Riordan; Richard Alarcon; Richard Alatorre; Marvin Braude; Laura Chick; John Ferraro; Michael Feuer; Ruth Galanter; Michael Hernandez; Nate Holden; Mark Ridley-Thomas; Rudy Svornich; Joel Wachs; Rita Walters; Ernani Bernardi; David Cunningham; Robert Farrell; Joan Milke Flores; Gloria Molina; Joy Picus; Arthur Snyder; Michael Woo; Zev Yaroslavsky; Herbert Boeckmann; Raymond Fisher; Deidre Hall; Art Mattox; Edith Perez; James Fisk; Gary Grennbaum; Maxwell Greenberg; Enrique Hernandez; Marguerite Justice; Barbara L. Schlei; Reva Tooley; Robert Weil; Stephen Yslas; Richard Hegelson; Flora Trostler; Joseph Callian; Brian Davis; Joseph Freia; Edward Guiza; James Harris; John Helms; Richard Spellman; James Tippings; John Tortorici; Lawrence Winston; Phillip Wixon; Gary Zerbe; Richard Zierenberg; City of Los Angeles; Jerry Brooks; John D. White; John Trundle; Robert Rochhoft; Daniel Koenig; Hal Bernson; Stephen Gavin; Emmett McGaughey; Robert M. Talcott; Janet Bogigian; Mary Burwell Cooper; Ellen M. Fawls; Michael K. Fox; James K. Hahn; Katherine J. Hamilton; Theodore D. Heyck Thomas Hokinson; Stuart D. Hotchkiss; Annette Keller; Lenore Lashley; Richard James; Honey A. Lewis; Ward G. McConnell; John T. Neville; James Pearson; Robert J. Pulone; Phillip Shiner; Phillip Sugar; Don W. Vincent, II; Tayo Popoola; G. Daniel Woodard; Dennis Conte; Gregory Berg; Randolph Mancini; Does, 1-100 who are either policymakers, city council members or L.A. Board of Police Commissioner members or employees of the City of L.A. Attorney's Office both past & present; Does, 100-201 who are members, or employees, or officers of the LAPD, both past & present, Defendants-Appellees.
 No. 01-56339.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 10, 2002.
 Filed December 13, 2002.
 As Amended on Denial of Rehearing January 14, 2003.
 
 COPYRIGHT MATERIAL OMITTED Stephen Yagman, Kathryn Bloomfield, Marion R. Yagman, and Joseph Reichmann, Yagman & Yagman & Reichman, Venice Beach, California, for the appellants.
 Rockard J. Delgadillo, Daniel Woodard, and Amy Jo Field, Office of the City Attorney, Los Angeles, California, for the appellees.
 Appeal from the United States District Court for the Central District of California; Consuelo B. Marshall, Chief Judge, Presiding. D.C. No. CV-96-02666-CBM.
 Before: GOODWIN, RYMER, and McKEOWN, Circuit Judges.
 McKEOWN, Circuit Judge.
 
 
 1
 This case arose from the bloody aftermath of a robbery in the Newbury Park neighborhood of Los Angeles. After police surrounded the getaway car, the two robbers, Robert Cunningham and Daniel Soly, exchanged gunfire with the police. Soly died and Cunningham was seriously injured. Cunningham was later tried and convicted of, among other things, murdering Soly by provoking the police to shoot. Soly's parents and Cunningham filed civil rights claims against the police and other defendants associated with the City of Los Angeles, alleging that police used excessive force in violation of the Fourth and Fourteenth Amendments.
 
 
 2
 We must decide whether Cunningham's claims are barred under Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because the theories he now asserts would call into question the validity of his state convictions. We must also decide whether the claims of Soly's parents are similarly barred by Cunningham's convictions.
 
 BACKGROUND
 
 3
 The facts and procedural history of this complex case are described more fully in our earlier opinion, Cunningham v. Gates, 229 F.3d 1271 (9th Cir.2000), so our discussion here is limited to the background relevant to the issues before us.
 
 I. THE ROBBERY
 
 4
 The Los Angeles Police Department's ("LAPD") Special Investigation Section ("SIS") learned in May of 1995 that Daniel Soly and Robert Cunningham had been involved in an armed robbery in Simi Valley. On June 26, 1995, SIS officers started surveillance of the two men after receiving tips that more criminal activity was afoot. That evening, SIS officers followed Cunningham and Soly to Newbury Park, California, and watched as they robbed the Southwest Liquor and Deli.
 
 
 5
 Cunningham and Soly left the store and ran to their getaway car. Plainclothes SIS officers in unmarked cars surrounded the car, boxing it in. This tactic, known as "jamming," is often used by special units to gain surprise over armed suspects and to prevent escape and dangerous high-speed chases. See Cunningham, 229 F.3d at 1278 n. 7.
 
 
 6
 What happened next is hotly debated. Cunningham and Soly allege in their complaint that SIS officers simply began to shoot, firing eighteen shotgun blasts and handgun shots into the getaway car, killing Soly, leaving Cunningham paralyzed, and wounding two fellow SIS officers. The SIS officers insist that Cunningham and Soly fired first. Whatever happened, the scene was chaos; the Ventura County Sheriff deputies called to the scene had difficulty distinguishing between the plainclothes police and the suspects and ended up arresting everyone.
 
 II. CUNNINGHAM'S STATE CONVICTIONS
 
 7
 Cunningham was charged with several crimes related to the robbery and gunfight. A California jury convicted Cunningham of three counts of attempting to murder SIS officers by firing a weapon at them; Soly's murder by provoking the officers into shooting at the getaway car; robbery; and burglary. Cunningham based his defense on the theory that the police fired first, and that he acted in self-defense when returning fire. The trial judge instructed the jury that they were to find Cunningham guilty of felony murder if, during the commission of the robbery,
 
 
 8
 1. The defendant also committed an intentional provocative act;
 
 
 9
 2. A peace officer, in response to the provocative act, killed a perpetrator of the crime of robbery;
 
 
 10
 3. The defendant's commission of the intentional provocative act was a cause of the death of Daniel Soly.
 
 
 11
 The instructions defined a "provocative act" as
 
 
 12
 1. Intentional,
 
 
 13
 2. The natural consequences of the act were dangerous to human life,
 
 
 14
 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life,
 
 
 15
 4. The act was above and beyond the act required for the commission of the crime of robbery, and
 
 
 16
 5. The act was not in self defense.
 
 
 17
 On the attempted murder counts, the jury was instructed that it must find that Cunningham knew or should have known that he was shooting at police officers engaged in the performance of their duties.
 
 III. THE § 1983 CLAIMS
 
 18
 Daniel Soly's parents, Armand and Betty Soly (the "Solys") and Robert Cunningham (collectively, the "plaintiffs"), filed claims under 42 U.S.C. § 1983 against various groups of defendants, including SIS officers who were directly involved in the gun battle with Cunningham and Soly (the "shooting officers"), LAPD officers who were not directly involved (the "non-shooting officers"), supervisory officers, members of the Los Angeles Police Commission, some members of the Los Angeles City Council, then-Mayor Richard Riordan, and various assistant Los Angeles city attorneys (the "City Officials"). The Solys and Cunningham alleged Fourth and Fourteenth Amendment violations as a result of police use of excessive force.
 
 
 19
 The overarching theory alleged in the complaint was that all of the officers and City Officials engaged in a "standard operating procedure" designed to create a situation likely to result in the death of the plaintiffs. In carrying out their part of this plan, according to the complaint, SIS officers set up surveillance of Cunningham and Soly, permitted them to rob the liquor store, jammed their car, fired on them without identifying themselves as police, and later covered up evidence of SIS misconduct.
 
 
 20
 The City Officials and the various officers filed motions for summary judgment, all but one of them claiming qualified immunity, and all of them arguing that the claims were barred by Heck because plaintiffs' theories would necessarily imply the invalidity of Cunningham's state criminal convictions.[1] Judge Letts granted Mayor Riordan's motion, but denied summary judgment for the others, rejecting their qualified immunity claims and concluding that Heck did not apply.
 
 
 21
 The City Officials and the officers filed an interlocutory appeal. We held that we did not have jurisdiction to consider the denial of summary judgment on the Heck-related defense. Cunningham, 229 F.3d at 1284-85. We noted, however, our "serious disagreement" with Judge Letts's ruling and encouraged the parties and the district court to revisit the Heck issue on remand. Id. at 1285 n. 21. We then reversed, on qualified immunity grounds, the denial of summary judgment to some of the non-shooting officers, the council members, the City attorneys, and an SIS supervisor. Id. at 1286-94. The case returned to the district court for proceedings against the remaining officers.
 
 
 22
 On remand, the case was reassigned to Chief Judge Marshall, who reconsidered the Heck issue and granted summary judgment to all of the remaining officials. That decision is the basis of this appeal.
 
 DISCUSSION
 
 23
 Under Heck, 512 U.S. at 487, 114 S.Ct. 2364, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir.1996). In California, a non-party's claim may be precluded by a judgment against a party if they were in privity. Lucido v. Superior Ct., 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990). On appeal from summary judgment, we review these issues de novo. Robi v. Reed, 173 F.3d 736, 739 (9th Cir. 1999).[2] We address the claims separately with respect to each plaintiff.
 
 I. CUNNINGHAM'S CLAIMS
 
 24
 As Cunningham's convictions have not been reversed, expunged, or called into question by issuance of a writ of habeas corpus, Cunningham cannot pursue claims under § 1983 if they are based on theories that "necessarily imply the invalidity of his conviction[s] or sentence[s]." Heck, 512 U.S. at 487, 114 S.Ct. 2364.[3] In evaluating whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating "an element of the offense of which he has been convicted." Id. at 487 n. 6, 114 S.Ct. 2364. The district court concluded that Cunningham's claims are barred under Heck because the complaint disputed several factual issues that the state jury had already resolved against him. We agree.
 
 
 25
 Cunningham's claims are squarely barred to the extent they depend on the theory that he did not provoke the fire-storm. In accord with the jury instructions, Cunningham's conviction for felony murder required the jury to find that he intentionally provoked the deadly police response, and that he did not act in self-defense. Any civil claim that Cunningham was not the provocateur necessarily fails as a result of the jury verdict.
 
 
 26
 But the complaint asserts a broader theory that does not depend on a finding that Cunningham was not the provocateur of the firestorm. Cunningham accuses the SIS officers of using excessive force to deliberately create a situation that provoked him into firing. We recognized such a danger creation theory in Alexander v. City of San Francisco, 29 F.3d 1355 (9th Cir.1994) and recently addressed it in Billington v. Smith, 292 F.3d 1177, 1188-89 (9th Cir.2002). In Alexander, the plaintiff's estate alleged that police officers, by entering his house with a battering ram and drawn guns to execute an administrative search warrant, created a dangerous situation that led to the decedent's ill-fated attempt to fire his gun at the officers. 29 F.3d at 1366. Even though the officers did not use excessive force at the moment they fired back at the decedent, a jury could conclude that their prior use of force "was excessive in relation to the purpose for which it was used (ensuring the immediate execution of a forcible entry inspection warrant)," so the plaintiff's estate could pursue its § 1983 claims. Id. at 1367. The Tenth Circuit has also recognized the danger creation theory. See Allen v. Muskogee, 119 F.3d 837, 840 (10th Cir.1997).
 
 
 27
 In order to prevail under the danger creation theory, however, Cunningham would need to call into question other elements necessary for his state convictions. In contrast to the police in Alexander, the SIS officers did not begin the chain of events that resulted in Cunningham's injuries. In convicting him of felony murder, the jury necessarily found that, pursuant to the jury instructions, Cunningham's firing at the police occurred during the commission of a robbery. The SIS officers' jamming of the getaway car falls within the temporal scope of Cunningham's crime and is part of a single act for which the jury found that Cunningham bears responsibility. Under the jury instructions that were given, the jury could not have convicted Cunningham for attempted murder unless the jury concluded that at the moment Cunningham fired on the SIS officers, he knew or should have known that they were police officers acting within the scope of their duties. This circumstance makes it impossible for Cunningham to prove, as he must to prevail on his § 1983 claim, that the police used excessive force when they jammed the getaway car because it would necessarily imply they were not acting within the scope of their duties.
 
 
 28
 Cunningham asserts that, even if the police did not create a dangerous situation by jamming his car, and fired only when provoked, he should be allowed to proceed under the theory that the police nonetheless used excessive force by responding to that provocation with the shotgun blasts and pistol shots. Cunningham urges us to rely on Hernandez v. City of Los Angeles, 624 F.2d 935, 937-38 (9th Cir.1980). In Hernandez, we held that a conviction for resisting arrest and rejection of a self-defense claim did not foreclose the possibility that the police still used excessive force in carrying out the arrest. Id. Although we decided Hernandez many years before the Supreme Court decided Heck, in a more recent decision, we held that Heck did not bar a § 1983 excessive force claim, despite the plaintiff's conviction for assaulting the sheriff and state patrolman who arrested him. Smithart, 79 F.3d at 952.
 
 
 29
 A close examination of Smithart reveals a very different factual setting from Cunningham's situation. The plaintiff in Smithart tried to use his truck to run over the sheriff and state patrolman, an act for which he was later convicted of assault. Id. at 952-53. The plaintiff claimed that, after he got out of his truck, the sheriff and patrolman used excessive force to arrest him. Id. at 952. The assault conviction and the excessive force claim did not arise from the same acts. Indeed, once he was out of the truck and without access to his "assault weapon," the officers had no need to use excessive force to subdue the plaintiff or to protect themselves.
 
 
 30
 Here, however, there was no break between Cunningham's provocative act of firing on the police and the police response that he claims was excessive. Indeed, in convicting Cunningham of felony murder, the jury concluded that the police response was a natural consequence of Cunningham's provocative act. Because the two are so closely interrelated, Cunningham's conviction forecloses his excessive force claim against the SIS officers.
 
 
 31
 Cunningham's § 1983 claims, in each of their incarnations, are barred under Heck because they would necessarily imply the invalidity of his state convictions for felony murder and attempted murder.
 
 II. THE SOLYS' CLAIMS
 
 32
 Although the Solys' § 1983 claims are identical to Cunningham's, Soly died during the shooting and was never charged or convicted of any crime related to the events of that night. Nonetheless, the officers argue that the Solys are precluded by the California common law of privity from relitigating issues that were already decided in Cunningham's trial. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 375, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) ("When faced with a state court judgment relating to an exclusively federal claim, a federal court must first look to the law of the rendering State to ascertain the effect of the judgment.").
 
 
 33
 Under California law, the collateral estoppel effect of Cunningham's convictions would prevent the Solys from pursuing their § 1983 claims if (1) the issues necessarily decided at Cunningham's trial are identical to the issues in the Solys' § 1983 claims; (2) Cunningham's trial resulted in a judgment on the merits; and (3) the Solys were in privity with Cunningham during his criminal trial. See State Farm Mut. Auto. Ins. Co. v. Davis, 7 F.3d 180, 183 (9th Cir.1993) (quoting Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1102 (1978)). In examining the collateral estoppel effect of a criminal trial on a third party who did not, and could not, participate, we are aware that "`the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.'" United States v. Carbullido, 307 F.3d 957, 961 (9th Cir. 2002) (quoting Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)); see also Vandenberg v. Superior Ct., 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229, 237 (1999) (noting that "a particular danger of injustice arises when collateral estoppel is invoked by a nonparty to the prior litigation.").
 
 
 34
 Although we agree with the district court that the first two elements are satisfied, we do not agree that the Solys were in privity with Cunningham at his trial. To establish privity, the officers must show that the Solys "`had an identity or community of interest with, and adequate representation by, the losing party in the first action'" and that, under the circumstances, the Solys "`should reasonably have expected to be bound by the prior adjudication.'" State Farm, 7 F.3d at 183 (quoting Clemmer, 151 Cal.Rptr. 285, 587 P.2d at 1102).
 
 
 35
 Under the first requirement for privity, we cannot conclude that the Solys' interests at Cunningham's trial were so similar that Cunningham was their "virtual representative." United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir.1984) (citation omitted); Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal.App.4th 1053, 71 Cal.Rptr.2d 77, 88 (1998). Cunningham was charged with, among other things, the murder of Soly, and some of the jury's findings that have preclusive effect on Cunningham's § 1983 claims were only necessary for that felony murder conviction.
 
 
 36
 It is impossible to say, with the kind of certainty required to apply collateral estoppel, that, even were he to have faced the same charges as Cunningham, Soly's interests at trial would not have sharply diverged from Cunningham's. See Citizens for Open Access, 71 Cal.Rptr.2d at 88 ("If the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and there is no privity."). Obviously, had Soly been alive, Cunningham would not have faced a felony murder charge for his death. In the trial that did occur, the Solys were not represented by counsel and had no voice in the proceedings. Nor did the jury have the benefit of evidence or argument from Soly's perspective. Looking into a crystal ball to divine how the trial might have proceeded in that alternate universe would require nothing short of rank speculation on our part — an exercise that is the antithesis of the confidence necessary to invoke collateral estoppel.
 
 
 37
 We also note that the circumstances of Cunningham's trial do not suggest that the Solys could expect to be bound by the results. The jury's verdict rested on Cunningham's actions, not Soly's. It was Cunningham's provocation, not Soly's, that was the focus of Cunningham's trial. And in convicting Cunningham of felony murder, the jury necessarily concluded that he was a cause, not the cause, of Soly's death. Thus, Cunningham's conviction does not on its face foreclose the possibility that the police also contributed to Soly's death.
 
 
 38
 The officers cannot establish privity under either of the required prongs of the privity test. Common law privity exceeds the bounds of common sense when a murder conviction prevents not only the murderer, but his victim, from seeking relief. Because the Solys' § 1983 claims are not barred under Heck or common law privity, we reverse with regard to their claims and remand to the district court for further proceedings.
 
 
 39
 AFFIRMED as to Cunningham's claims and REVERSED and REMANDED as to the Solys' claims. Each party shall bear costs in accord with Federal Rule of Appellate Procedure 39.
 
 
 
 Notes:
 
 
 [1]
 The City Officials and LAPD officers also sought summary judgment on grounds unrelated to the issues we now consider
 
 
 [2]
 The plaintiffs argue that Chief Judge Marshall abused her discretion by departing from the law of the case to hold that the claims are barred byHeck. In light of the procedural posture of the case, we conclude that Chief Judge Marshall did not abuse her discretion in reconsidering the application of Heck.
 
 
 [3]
 Relying onSpencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), Cunningham urges this court to hold that Heck is inapplicable to his § 1983 suit because, for him, habeas relief is "impossible as a matter of law." In Spencer, Justice Souter, in a concurrence joined by Justices O'Connor, Ginsburg, and Breyer, suggested that a § 1983 plaintiff who is not "in custody" may bring a § 1983 action establishing the unconstitutionality of a conviction without being bound to satisfy Heck's favorable termination requirement, because obtaining habeas relief "would be impossible as a matter of law." Spencer, 523 U.S. at 21, 118 S.Ct. 978. Cunningham argues that his situation is akin to those who are "not in custody" because he is time-barred from seeking habeas relief. We decline to hold that Cunningham's failure timely to pursue habeas remedies takes his § 1983 claim out of Heck's purview.