[No. G034294. Fourth Dist., Div. Three. May 10, 2005.]

HONG CUC TRUONG, Plaintiff and Appellant, v.
ORANGE COUNTY SHERIFF'S DEPARTMENT et al., Defendants and
Respondents.

### COUNSEL

Norman & Norman and John L. Norman for Plaintiff and Appellant.

Franscell, Strickland, Roberts & Lawrence, David D. Lawrence and Jorje Chica for Defendants and Respondents.

### OPINION

**MOORE, J.**—Hong Cuc Truong appeals from a judgment on the pleadings entered in favor of respondents in this civil rights case. The respondents argue that Truong's claims are barred because the claims call into question the validity of her conviction for interfering with the exercise of duty by law enforcement officers. We agree with the respondents that Truong's claims are barred and affirm the judgment.

## I

### FACTS

On May 10, 2002, Truong was arrested and booked into the Orange County jail on a shoplifting charge. During booking, she was taken to the shower room and ordered to disrobe and take a shower with the other inmates. According to Truong's second amended complaint, "Initially, the Plaintiff balked at disrobing in front of other inmates or deputies, but was then ordered by one or more deputies to disrobe and shower. She was then confronted by at least four deputies who stood in line in front of her in a threatening manner, with one other deputy supervising the others. She then tried to comply and commenced to disrobe by removing her sweater. As she had her sweater up around her neck and [was] removing her arms out of the

sleeves, four or more deputies pounced upon her and began twisting her arms and striking her about her body. In the process, the deputies fractured her arm and caused other numerous soft tissue injuries, among other injuries. At no time . . . during the assault by the deputies upon Plaintiff did she resist or strike or even attempt to strike or make any physical movement toward any deputy. After the assault on Plaintiff, she was carried off to a holding cell and left there without medical care or attention for an inordinate and unreasonably long period of time, even though the deputies knew or should have known that she was severely injured and in great pain and discomfort and in need of immediate medical attention."[1]

Truong was subsequently tried by a jury and found guilty on three counts of shoplifting. In a separate action, she was charged with one count of assault on a custodial officer (Pen. Code, § 241.1) and one count of battery (Pen. Code, § 243) for the jail incident. Pursuant to a plea agreement, however, Truong instead pled guilty to one count of resisting the exercise of lawful duty in violation of Penal Code section 148, subdivision (a), and the assault and battery counts were dismissed. According to the plea form, Truong admitted that she "willfully and unlawfully resisted and obstructed a peace officer's lawful order, to wit OCSD order to disrobe and take a shower." The court accepted the plea and fined Truong $100 plus penalty assessments.

Truong subsequently filed the instant lawsuit, alleging the sheriff's deputies used excessive force during the incident at the jail, in violation of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Truong pleaded causes of action for violation of civil rights pursuant to title 42 United States Code section 1983 (hereafter section 1983) against four sheriff's deputies, the Orange County Sheriff, the sheriff's department, and the County of Orange (collectively respondents), a claim for attorney fees pursuant to title 42 United States Code section 1988 against all respondents, assault and battery by the four deputies under state law, negligent employment and supervision by the sheriff's department and the sheriff, and intentional infliction of emotional distress by the four deputies.

The respondents moved for judgment on the pleadings, arguing that Truong's plea of guilty and subsequent conviction for violating Penal Code section 148 precluded a civil rights claim and similar state law claims because it necessarily challenges the validity of her conviction. After briefing and a hearing the court granted the motion. Truong now appeals.

---

[1] Truong does not argue that the failure to provide her with prompt medical attention is an independent basis for her civil rights claims.

## II

## DISCUSSION

■ On review of a judgment on the pleadings, we accept as true facts pleaded in the complaint and subject to judicial notice. (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1065 [20 Cal.Rptr.3d 562].) We review questions of law de novo. (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246 [2 Cal.Rptr.3d 739]. ■ As a state court, we look to federal law to determine the validity of an action under section 1983. (*Buenavista v. City and County of San Francisco* (1989) 207 Cal.App.3d 1168, 1174 [255 Cal.Rptr. 329].) "[S]tate law that would produce a different outcome in state than in federal court [on a claim under section 1983] must yield to federal law." (*County of Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 300 [87 Cal.Rptr.2d 441, 981 P.2d 68].)

The central question is whether Truong's civil rights claim necessarily calls into question her conviction for violating Penal Code section 148. Penal Code section 148, subdivision (a)(1), states: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

■ The principle that civil rights actions cannot call into question undisturbed convictions was established by the United States Supreme Court in *Heck v. Humphrey* (1994) 512 U.S. 477 [129 L.Ed.2d 383, 114 S.Ct. 2364] (*Heck*). In that case, a man convicted of manslaughter sued various defendants under section 1983, asserting they had engaged in unlawful acts that had led to his arrest and conviction. (*Heck, supra,* 512 U.S. at pp. 478–479.) The court analogized to the common law tort action of malicious prosecution, which requires termination of the prior criminal proceeding in favor of the accused. This requirement avoids collateral attacks on the conviction, and avoids inconsistent resolutions arising from the same facts. The court held: "[T]he hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to [section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." (*Heck, supra,* 512 U.S. at p. 486, fn. omitted.) Thus, in order to maintain a claim for damages under section 1983 for harm caused by actions, which, if they were unlawful, would render a conviction invalid, the plaintiff must prove the conviction had been reversed or otherwise expunged. (*Heck, supra,* 512 U.S. at pp. 486–487.)

Accordingly, in *Nuno v. County of San Bernardino* (C.D.Cal. 1999) 58 F.Supp.2d 1127, the defendant pleaded nolo contendere to obstructing a peace officer in violation of Penal Code section 148 and carrying a concealed firearm in violation of Penal Code section 12025, subdivision (a). He later filed an action under section 1983, claiming he was detained unreasonably, falsely accused of committing a crime, and assaulted and battered.

■ The court held he could not maintain his action without demonstrating the conviction had been appealed or expunged, explaining: "[P]laintiff's allegations that he was subjected to excessive force during his arrest, if proven, would necessarily imply the invalidity of his obstruction of a peace officer conviction. Under California Penal Code section 148 (section 148), a necessary element of a criminal prosecution for obstruction of a peace officer is that the obstruction must have occurred while the officer was engaged in the lawful performance of his or her duties. . . . [¶] An officer cannot be engaged in the lawful performance of her duties if she is subjecting an arrestee to excessive force. . . . [¶] The Supreme Court explained in footnote 6 of the *Heck* opinion that a successful section 1983 action, premised on a police officer's use of excessive force during an arrest, would necessarily imply the invalidity of the plaintiff's conviction for resisting that arrest in a state where the lawfulness of the resisted arrest was a prima facie element of the resisting-arrest offense. [Citation.] California is such a state, as the cited cases make clear, and as a result plaintiff, previously convicted of obstructing a peace officer in performing an arrest, may not bring a section 1983 action premised on the officer's use of excessive force in effecting the obstructed arrest. [Citations.] This is so because a finding in the instant action that [the officer] used excessive force in arresting plaintiff would necessarily imply that [the officer] was not engaged in the lawful performance of his duties during that arrest and that, consequently, plaintiff could not have violated section 148." (*Nuno v. County of San Bernardino, supra,* 58 F.Supp.2d at pp. 1133–1134, fn. omitted.) In *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401 [115 Cal.Rptr.2d 269], Division One of this court applied the same principle to state law claims pleaded in addition to federal civil rights claims. (*Id.* at pp. 1412–1413.)

By contrast, if the events complained of in an action under section 1983 do not call into question the plaintiff's conviction, the action may proceed. In *Sanford v. Motts* (9th Cir. 2001) 258 F.3d 1117, the plaintiff interfered with an arrest and was herself arrested and handcuffed. Her civil rights action alleged that after she was handcuffed, an officer struggling with another person punched her in the face. (*Id.* at p. 1118.) The court concluded that a claim based on the use of excessive force after an arrest was not barred because a judgment for the plaintiff would not necessarily imply her conviction was invalid. (*Id.* at pp. 1119–1120; see also *Smith v. City of Hemet* (9th Cir. 2005) 394 F.3d 689.)

Truong claims this case is like *Sanford*, because the alleged assault on her was after the act that led to her conviction. She claims her failure to obey a lawful order ended as soon as she started removing her sweater. The court addressed this issue in *Cunningham v. Gates* (9th Cir. 2002) 312 F.3d 1148. After a robbery, police surrounded the getaway car and exchanged gunfire with the two robbers. One of the robbers died, and the second, Cunningham, was later convicted of his murder for provoking the police to shoot. The dead robber's parents and Cunningham filed excessive force claims. (*Id.* at pp. 1151–1152.)

The court held the claims were barred. "In order to prevail under the danger creation theory, however, Cunningham would need to call into question other elements necessary for his state convictions. . . . [T]he SIS officers did not begin the chain of events that resulted in Cunningham's injuries. In convicting him of felony murder, the jury necessarily found that, pursuant to the jury instructions, Cunningham's firing at the police occurred during the commission of a robbery. The SIS officers' jamming of the getaway car falls within the temporal scope of Cunningham's crime and is part of a single act for which the jury found that Cunningham bears responsibility." (*Cunningham v. Gates, supra,* 312 F.3d at p. 1154.)

*Cunningham* is more analogous to this case than *Sanford*. A chain of events began when Truong refused the lawful order that did not end until she was disrobed. This was not a case where the acts alleged to be violations of the plaintiff's civil rights occurred hours, or even minutes, after the act which led to the plaintiff's conviction; the acts occurred mere moments later. Asserting that the crime was somehow over because the plaintiff changed her mind and started to remove her sweater is temporal hair-splitting, and would place deputies in untenable situations, where they are required to guess the mindset of the arrestee. We agree with the trial court that Truong's refusal to obey the lawful order and the events that led to her injuries are part of an unbreakable chain of events. Therefore, the limit set forth in *Heck* applies here, and Truong's civil rights claim cannot be maintained.

■ Finally, we agree with the respondents that Truong's analogy of her case to Rosa Parks and her assertion that following *Heck* gives "carte blanche to beat to a bloody pulp, with financial impunity, any arrestee, provided they obtained a conviction for the conduct which preceded the beating" is pure hyperbole. *Heck* limits a narrow class of civil rights actions when allowing the action to proceed would necessarily challenge the legitimacy of the undisturbed conviction. It applies only in cases where the plaintiff has been convicted of conduct relating to the arrest, such as refusing a lawful order or resisting arrest. Asserting that Truong was somehow analogous to Rosa Parks

is both factually inaccurate and diminishes the legacy of those who risked themselves to fight for civil rights in this country. It does not impress this court.

We conclude that Truong's federal civil rights claims cannot be maintained, nor can her state law causes of action for assault, battery, and intentional infliction of emotional distress. She does not address the issue of her negligent supervision claim, and it is therefore waived.

## III

## DISPOSITION

The judgment is affirmed. In the interests of justice, each party shall bear its own costs on appeal.

Bedsworth, Acting P. J., and Fybel, J., concurred.