[No. B227630. Second Dist., Div. Eight. Nov. 9, 2011.]

KRISTY BEETS et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Dale K. Galipo, Dale K. Galipo and Melanie T. Partow for Plaintiffs and Appellants.

Lawrence Beach Allen & Choi, David D. Lawrence and Jin S. Choi for Defendants and Respondents.

**OPINION**

**FLIER, J.**—*Heck v. Humphrey* (1994) 512 U.S. 477, 486–487 [129 L.Ed.2d 383, 114 S.Ct. 2364] (*Heck*) holds that when a judgment in favor of the plaintiff in a suit under title 42 of the United States Code section 1983 (section 1983) would necessarily imply the invalidity of the plaintiff's underlying conviction or sentence, the complaint must be dismissed, unless the plaintiff can demonstrate that his conviction or sentence has been invalidated. In *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 902 [76 Cal.Rptr.3d 787, 183 P.3d 471] (*Yount*), our Supreme Court held that the same principle applies to analogous state tort suits.

In this case, appellants Kristy Beets and Glenn Allen Rose are the parents of Glenn Patrick Rose (Rose), who was killed during an incident with the Los Angeles County Sheriff's Department and California Highway Patrol. Appellants, in their individual capacities and also as successors in interest to Rose,

brought this wrongful death action against respondents Los Angeles County and Sheriff's Deputy Steven Winter. They allege that Deputy Winter's use of deadly force against Rose was unreasonable. While Rose did not survive, another participant in the incident, Sarah Morales, survived. Morales was tried and convicted of the assault of Deputy Winter in the underlying incident.

Respondents demurred to the first amended complaint pursuant to *Heck* and *Yount*, arguing that Morales's conviction barred appellants' wrongful death claims. The trial court sustained respondents' demurrer and entered judgment for respondents. We reverse.

## STATEMENT OF FACTS

### 1. *The Circumstances of Rose's Death*

In the early morning hours of May 13, 2008, Rose allegedly stole a white Honda. A pursuit with police officers ensued. The white Honda became disabled during the pursuit, and Rose and his passenger, Morales, abandoned the car in an alley. Rose and Morales entered a maroon pickup truck that was parked in the same alley. Rose got into the driver's seat of the truck and Morales got into the passenger's seat.

Deputy Winter and three other officers stopped their patrol vehicles in the alley and ran to the maroon truck. Deputy Winter and a California Highway Patrol (CHP) officer ran to the driver's side of the truck where Rose was seated. CHP Officer Shultz and Sheriff's Deputy Mah ran to the passenger side of the truck where Morales was seated. While the truck was still parked, Rose attempted to strike Deputy Winter through the driver's window to free himself from the deputy's grasp. Morales kicked and punched Deputy Mah and Officer Shultz through the passenger window. Rose then started the truck and drove it forward and away from the officers and collided with a CHP patrol car across the alley. Deputy Winter ran a few steps in the direction of the truck. Rose then reversed away from the patrol car and in the direction of Deputy Winter. Rose changed directions yet again and went forward to collide with Deputy Winter's patrol car. He reversed the truck away from the patrol car and backed up a second time in the direction of Deputy Winter. Deputy Winter moved out of the truck's path by moving to the right, so that he was then positioned on the passenger side of the truck. Rose brought the truck to a momentary stop, at which time Deputy Winter drew his gun and shot at Rose. A shot hit Rose in the chest and caused fatal injuries.

### 2. *Morales's Criminal Proceedings*

As a result of the incident, Morales was tried and convicted of two counts of driving a vehicle without the owner's consent, three counts of assault with

a deadly weapon or by force likely to produce great bodily injury or death on a peace officer (ADW on an officer), one count of evading a pursuing officer, and one count of resisting an executive officer. One of the ADW on an officer counts was for ADW on Deputy Winter.

The prosecution's theory at trial was *not* that Morales was the direct perpetrator of the assault against Deputy Winter. Rather, the prosecution's theory was that she was guilty of assault because (1) she aided and abetted Rose in evading an officer or resisting an officer; (2) during the commission of either evading an officer or resisting an officer, Rose committed ADW on an officer; and (3) Rose's ADW on an officer was a natural and probable consequence of his evading or resisting an officer. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1123 [77 Cal.Rptr.2d 428, 959 P.2d 735] ["the aider and abettor is guilty not only of the intended, or target, offense, but also of any other crime the direct perpetrator actually commits that is a natural and probable consequence of the target offense"].) Thus, the jury was instructed with CALCRIM Nos. 400 and 401 on the principles of aiding and abetting, and with CALCRIM No. 402 as follows:

"The defendant is charged in Count 6 with evading a peace officer in violation of Vehicle Code section 2800.2 and in Count 7 with resisting an executive officer in violation of Penal Code section 69.

"The defendant is also charged in Counts 2, 3 and 4 with [ADW on an officer] in violation of Penal Code section 245(c).

"You must first decide whether the defendant is guilty of either evading a peace officer or resisting an executive officer or both. If you find the defendant is guilty of either one or both of these crimes, you must then decide whether she is guilty of [ADW on an officer].

"Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.

"To prove that the defendant is guilty of [ADW on an officer], the People must prove that:

"1. The defendant is guilty of either evading a peace officer or resisting an executive officer or both;

"2. During the commission of either evading a peace officer or resisting an executive officer or both, a co-participant in either one or both [of] those crimes committed the crime of [ADW on an officer];

"AND

"3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of [ADW on an officer] was a natural and probable consequence of the commission of either evading a peace officer or resisting an executive officer or both.

"A *co-participant* in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander.

"A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. . . .

"To decide whether [the] crime of [ADW on an officer] was committed, please refer to the separate instructions that I will give you on those crimes."

As indicated in the final paragraph of CALCRIM No. 402, the trial court then instructed the jury on ADW on an officer. The court instructed that an element of the offense was that "[w]hen the defendant acted, the person assaulted was lawfully performing his duties as a peace officer . . . ." (CALCRIM No. 860.) The court further instructed with CALCRIM No. 2670 that:

"The People have the burden of proving beyond a reasonable doubt that Cory Shultz, Steven Winter and Calvin Mah were lawfully performing their duties as a peace officer. If the People have not met this burden, you must find the defendant not guilty of [ADW on an officer] . . . .

"A peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties.

"A peace officer may use reasonable force to arrest or detain someone, to prevent escape, to overcome resistance, or in self-defense . . . ."

Morales appealed her conviction, and the Court of Appeal affirmed on December 8, 2009. Our Supreme Court denied her petition for review on February 24, 2010.

## PROCEDURAL HISTORY

Appellants filed the precursor to this lawsuit in the United States District Court for the Central District of California on January 23, 2009. The federal

complaint alleged section 1983 claims and state law claims for battery and negligence. The district court held that appellants' section 1983 claims were barred by *Heck* and dismissed them. The court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

On January 7, 2010, appellants appealed the dismissal of their section 1983 claims to the Ninth Circuit Court of Appeals.[1] On the same date, they filed their dismissed state law claims in the superior court. The first amended complaint alleges wrongful death based on battery and negligence. It alleges that Deputy Winter's use of deadly force in this instance was unreasonable. Respondents demurred to the first amended complaint, and the trial court sustained the demurrer without leave to amend on July 26, 2010. Citing *Heck* and *Yount*, the trial court ruled that appellants' wrongful death complaint was barred "because any recovery of damages based on Deputy Winter's alleged use of unreasonable force would necessarily imply the invalidity of Morales' criminal conviction for assault with a deadly weapon on a peace officer and resisting a peace officer." The court explained that "judicially-noticed documents demonstrate that the jury in the prior criminal proceeding against Morales specifically found that Deputy Winter's use of force was lawful," and the "facts in the Morales criminal case arise out of the incident which forms the basis of plaintiff's action against defendants in this case."

The court entered judgment against appellants on July 27, 2010. Appellants filed a timely notice of appeal on September 24, 2010.

## STANDARD OF REVIEW

A demurrer tests the sufficiency of a plaintiff's complaint by raising questions of law. (*Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 127 [226 Cal.Rptr. 321].) When the trial court sustains a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) We accept as true all properly pleaded material factual allegations of the complaint and other relevant matters that are properly the subject of judicial notice, and we liberally construe all factual allegations of the complaint with a view to substantial justice between the parties. (*Marina Tenants Assn. v. Deauville Marina Development Co., supra*, at p. 127.)

---

[1] According to the parties' briefs, briefing is complete in the federal appeal.

## DISCUSSION

### 1. Heck *and Its Application in the California Courts*

In *Heck*, the United States Supreme Court considered "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." (*Heck, supra*, 512 U.S. at p. 478.) Roy Heck was convicted in Indiana state court of voluntary manslaughter, and while the appeal from his conviction was pending, he filed a lawsuit in the district court under section 1983, alleging that state law enforcement officers had engaged in an unlawful investigation, destroyed evidence, and used unlawful voice identification procedures in his manslaughter trial. (*Heck*, at p. 479.) Heck's conviction was affirmed on appeal while his section 1983 lawsuit was pending. (*Heck*, at p. 479.)

■ Noting that section 1983 created a species of tort liability, the *Heck* court recognized the established principle that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ." (*Heck, supra*, 512 U.S. at p. 486.) The court therefore held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." (*Id.* at p. 487.) Because Heck's section 1983 action challenged the validity of his conviction for manslaughter, and that conviction had been validated and finalized, the court affirmed the dismissal of his action.

In *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401 [115 Cal.Rptr.2d 269] (*Susag*), the California Court of Appeal applied the *Heck* rule to section 1983 claims and related state law claims. Cory Susag was tried and convicted of resisting an officer during an incident with the Orange County Sheriff's Office. (*Susag*, at p. 1406.) After he was convicted, Susag filed the section 1983 lawsuit and also alleged assault, battery, use of excessive force, false imprisonment, and intentional infliction of emotional distress. Susag's lawsuit arose from the same incident with the Orange County Sheriff for which he was convicted. (*Susag*, at p. 1407.) The court noted that an essential element of resisting an officer is that the officer must be engaged in the performance of his or her duties, and the use of excessive force is not within the performance of an officer's duties. (*Id.* at p. 1409.) Thus, Susag's allegations that he was subjected to excessive force, if proven, would necessarily imply the invalidity of his conviction for resisting an officer. Accordingly, his section 1983 claim was barred by *Heck*. The court determined that Susag's state law claims were also barred because it "appear[ed] unsound to distinguish between section 1983 and state law claims

arising from the same alleged misconduct." (*Susag*, at p. 1412.) Moreover, several public policy concerns compelled that result—Susag could not profit from his own illegal act and should bear the sole responsibility for the consequences of his act, and a determination contrary to the result in the criminal proceedings would engender disrespect for the courts and discredit the administration of justice. (*Ibid.*)

Later, in *Yount*, the California Supreme Court affirmed that the *Heck* analysis applies equally to a plaintiff's section 1983 claims and his analogous state tort claims: "*Heck*, of course, is a rule of federal law that applies only to federal causes of action that challenge the validity of a state conviction. [Citation.] But we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct and . . . the parties offer none. Section 1983 ' "creates a species of tort liability" ' [citation] and has been described as ' "the federal counterpart of state battery or wrongful death actions." ' [Citation.] . . . [Citation.] [¶] . . . [¶] In light of the fact that *Heck* and California law express similar concerns about judicial economy and the avoidance of conflicting resolutions, we conclude that the [*Heck*] analysis in the preceding sections applies equally to Yount's common law claim for battery." (*Yount, supra,* 43 Cal.4th at p. 902.)

### 2. Appellants' Lawsuit Is Not Barred by Morales's Conviction

With the *Heck/Yount* analysis in mind, we now turn to whether Morales's conviction for ADW on an officer serves as a bar to appellants' lawsuit. Respondents contend that the jury in Morales's case found that Deputy Winter was lawfully performing his duties during the underlying incident and did not use excessive force. As such, they contend, *Heck* and *Yount* bar appellants' lawsuit. We disagree.

The *Heck* rule came into being because the Supreme Court wanted to prevent defendants' collateral attacks on their convictions through the means of a civil lawsuit. *Heck, Yount,* and the California cases applying the rule all involve convicted defendants whose subsequent civil lawsuits would challenge their *own* convictions. (*Heck, supra,* 512 U.S. at pp. 478–479; *Yount, supra,* 43 Cal.4th at pp. 888–889 [plaintiff who pled guilty to resisting an officer subsequently brought excessive force lawsuit arising from same events]; *Truong v. Orange County Sheriff's Dept.* (2005) 129 Cal.App.4th 1423, 1426, 1429 [29 Cal.Rptr.3d 450] [same]; *Susag, supra,* 94 Cal.App.4th at pp. 1406–1407; see also *Lujano v. County of Santa Barbara* (2010) 190 Cal.App.4th 801, 805 [118 Cal.Rptr.3d 707] [minor charged with resisting an

officer agreed to informal probation, thus avoiding prosecution on the charge; her subsequent civil lawsuit for excessive force was *Heck/Yount*-barred].) As voiced in *Susag*, apart from the avoidance of conflicting results, there is a desire to avoid giving such claimants a second bite at the apple and the chance to profit from their own illegal acts. (*Susag, supra*, at p. 1412.)

But respondents have not cited any published cases in which a plaintiff's civil lawsuit was *Heck/Yount*-barred by a *third party's* underlying conviction, nor are we aware of any. There is, however, a published Ninth Circuit opinion holding that a plaintiff's excessive force lawsuit is *not* barred by a third party's related conviction, *Cunningham v. Gates* (9th Cir. 2002) 312 F.3d 1148, 1156 (*Cunningham*). In *Cunningham*, police surrounded the getaway car of two robbers, Robert Cunningham and Daniel Soly. (*Id.* at p. 1152.) Cunningham and Soly exchanged gunfire with the police; Cunningham was seriously injured and Soly died as a result of the incident. (*Id.* at pp. 1151–1152.) Cunningham was convicted of three counts of attempted murder of the officers, the murder of Soly by provoking officers to shoot at the getaway car, robbery, and burglary. (*Id.* at p. 1152.) Both Soly's parents and Cunningham filed a section 1983 lawsuit for use of excessive force. (*Cunningham*, at p. 1152.) The court held that Cunningham's claims were barred by *Heck*. (*Cunningham*, at pp. 1154–1155.) However, the claims of Soly's parents were not barred by Cunningham's convictions. (*Id.* at p. 1156.) The court held that *Heck* did not apply to the Solys' claims and looked at the issue as one of collateral estoppel. (*Cunningham*, at pp. 1155–1156.) Cunningham's convictions would prevent the Solys' section 1983 claims under the law of collateral estoppel only if (1) the issues decided at Cunningham's trial were identical to the issues in the Solys' claims, (2) Cunningham's trial resulted in a judgment on the merits, and (3) the Solys were in privity with Cunningham during his trial. (*Cunningham*, at p. 1155.) While the first two elements were satisfied, the Solys were not in privity with Cunningham at his trial:

"[W]e cannot conclude that the Solys' interests at Cunningham's trial were so similar that Cunningham was their 'virtual representative.' [Citations.] . . .

"It is impossible to say, with the kind of certainty required to apply collateral estoppel, that, even were he to have faced the same charges as Cunningham, Soly's interests at trial would not have sharply diverged from Cunningham's. [Citation.] Obviously, had Soly been alive, Cunningham would not have faced a felony murder charge for his death. In the trial that did occur, the Solys were not represented by counsel and had no voice in the

proceedings. Nor did the jury have the benefit of evidence or argument from Soly's perspective. Looking into a crystal ball to divine how the trial might have proceeded in that alternate universe would require nothing short of rank speculation on our part—an exercise that is the antithesis of the confidence necessary to invoke collateral estoppel.

"We also note that the circumstances of Cunningham's trial do not suggest that the Solys could expect to be bound by the results. The jury's verdict rested on Cunningham's actions, not Soly's. It was Cunningham's provocation, not Soly's, that was the focus of Cunningham's trial." (*Cunningham, supra*, 312 F.3d at p. 1156.)

Because privity between Soly and Cunningham was lacking, the Solys' section 1983 claims could proceed. (*Cunningham, supra*, 312 F.3d at p. 1156.)

Here, it is not the case that Rose was convicted of ADW on Deputy Winter and now seeks to profit from his own bad act by bringing an excessive force lawsuit. Nor is it the case that Morales is bringing an excessive force lawsuit after being convicted. These would be cases in which the *Heck/Yount* bar would likely apply. But we do not believe it appropriate to apply the same bar to appellants' wrongful death lawsuit when Rose was never convicted of a crime arising from the facts. The success of appellants' lawsuit does not necessarily invalidate Morales's conviction.

■ A simple hypothetical will help illustrate our point. If Rose had survived the incident and had been charged, he could have been granted a separate trial. In that case, it is possible Morales could have been found guilty of ADW on Deputy Winter at her trial, whereas Rose could have been found not guilty of ADW at his. It is an occasional reality that "inconsistent jury verdicts are inevitable in our criminal justice system." (*People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1, 5 [104 Cal.Rptr.3d 764, 224 P.3d 86] (*Sparks*).) " 'While symmetry of results may be intellectually satisfying, it is not required.' " (*Id.* at p. 12, quoting *Standefer v. United States* (1980) 447 U.S. 10, 25 [64 L.Ed.2d 689, 100 S.Ct. 1999].) "[A] verdict regarding one defendant has no effect on the trial of a different defendant." (*Sparks*, at p. 5.) Therefore, if a verdict regarding one participant in a crime is inconsistent with verdicts of other coparticipants, all of the verdicts may stand. (*Ibid.*) This is all to say that a not guilty verdict as to Rose would not have invalidated Morales's conviction. Given our justice system's tolerance of inconsistent results for different participants in a crime, we do not agree with respondents' claim that a judgment in favor of appellants here would necessarily lead to habeas corpus relief for Morales. While Rose is entitled to his day in court, Morales already had hers.

■ We find *Cunningham* persuasive in that, for appellants' lawsuit to be barred, Morales's conviction must have a collateral estoppel effect on these proceedings. We hold it does not. As noted above, the doctrine of collateral estoppel prevents the relitigation of issues only if "(1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* (2) there was a final judgment on the merits; *and* (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098] (*Clemmer*).) ■ In determining the collateral estoppel effect of a criminal trial on a third party who did not participate, we are mindful that " 'the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.' " (*People v. Santamaria* (1994) 8 Cal.4th 903, 912 [35 Cal.Rptr.2d 624, 884 P.2d 81], quoting *Ashe v. Swenson* (1970) 397 U.S. 436, 444 [25 L.Ed.2d 469, 90 S.Ct. 1189].)

The first element of collateral estoppel is satisfied here. Appellants' first amended complaint is based on the allegation that Deputy Winter's use of deadly force against Rose was unreasonable. Under the prosecution's theory in Morales's trial, Morales was guilty of ADW on an officer because she aided and abetted Rose, the direct perpetrator. As an element of the offense, the jury had to determine whether Deputy Winter was engaged in the performance of his duties during the assault (Pen. Code, § 245, subd. (c)), and the court properly instructed the jury that an officer who uses unreasonable or excessive force is not lawfully performing his duties. (*People v. White* (1980) 101 Cal.App.3d 161, 167 [161 Cal.Rptr. 541].) The court also instructed the jury that it had to find Morales not guilty if Deputy Winter was not lawfully performing his duties. Thus, the issue here—whether Deputy Winter used unreasonable force—was an issue in Morales's trial.

The second element of collateral estoppel is also satisfied. Morales's conviction, having been affirmed by the Court of Appeal and denied review by our Supreme Court, was a final judgment on the merits.

■ The third element, however, is not satisfied. Rose was not a party in Morales's trial, nor was he in privity with Morales at her trial. A finding of privity must satisfy due process requirements. (*Clemmer, supra*, 22 Cal.3d at p. 875.) This requires "that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." (*Ibid.*) We cannot conclude that Rose had an identity or community of interest with, and adequate representation by, Morales. First,

the entire record of Morales's trial is not before us. We have only a few small fragments of that record before us, fragments the court below judicially noticed. We have no idea what happened at most of Morales's trial. Thus, we have an inadequate basis for concluding that Morales adequately represented the interests of Rose.

 Second, even if we had the whole trial record, it would be mere speculation for us to say that the interests of Rose and Morales would not have diverged or that Morales would have been an adequate representative. (See *Aronow v. LaCroix* (1990) 219 Cal.App.3d 1039, 1049 [268 Cal.Rptr. 866] ["If the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and there is no privity."]; *Cunningham, supra*, 312 F.3d at p. 1156.) We do not know whether Rose would have had a separate trial, what defense strategy he would have chosen, or what the evidence and argument from his perspective might have looked like. We agree with the *Cunningham* court that to conclude Morales adequately represented Rose "would require nothing short of rank speculation on our part—an exercise that is the antithesis of the confidence necessary to invoke collateral estoppel." (*Cunningham, supra*, 312 F.3d at p. 1156.) Moreover, to say that a defendant may adequately represent the interests of an absent codefendant seems inconsistent with the absent party's constitutional due process rights. We know that "no criminal defendant can be bound by an *adverse* factual finding in a trial in which that defendant did not participate." (*Sparks, supra*, 48 Cal.4th at p. 16.) This principle reinforces the notion that we cannot presume a criminal defendant is adequately represented in a trial from which he is absent.

In sum, we hold that privity is lacking, and accordingly, Morales's conviction does not have a collateral estoppel effect in this case. *Heck* and *Yount* likewise do not bar appellants' lawsuit.[2]

---

[2] We noted above that respondents have not cited any published cases in which a plaintiff's civil lawsuit was *Heck/Yount*-barred by a third party's underlying conviction. They do cite one unpublished federal case from the Eastern District of Michigan, *Barton v. Priest* (E.D.Mich., Sept. 19, 2008, No. 05-73415) 2008 WL 4372637. The plaintiffs' section 1983 claims in *Barton* were based on an alleged unreasonable search and seizure. (2008 WL 4372637 at p. *3.) In an analysis consisting of two sentences, the district court held that one plaintiff's claims were *Heck*-barred because in her *husband's* criminal case, it was determined that probable cause to search their house existed. (*Id.* at p. *4.) The court then went on to state: "*Heck* bars both Plaintiffs' 42 U.S.C. § 1983 claims, as Plaintiff Pierce stands in privity with her husband, and is also collaterally estopped from re-litigating the lawfulness of the officers' entry into the home and subsequent search of the premises." (*Id.* at p. *5.) This was the extent of *Barton*'s analysis of privity and collateral estoppel. Respectfully, we do not find *Barton*'s brief analysis of these issues instructive.

## DISPOSITION

The judgment is reversed. Appellants to recover costs on appeal.

Rubin, Acting P. J., and Grimes, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 25, 2012, S198782.