Filed 5/13/13  Kemper v. County of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHNNEISHA KEMPER,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>        Defendants and Respondents. | D059637<br><br><br>(Super. Ct. No. 37-2010-00094707-CU-CR-CTL)<br><br>ORDER DENYING PETITION FOR REHEARING; ORDER MODIFYING OPINION<br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

The petition for rehearing is DENIED.

It is ordered that the opinion filed April 22, 2013 be modified to correct a clerical

error as follows:

On page 32, in the second sentence of the Disposition section, the word "against"

is changed to "in favor of."

**There is no change in judgment.**

HALLER, Acting P. J.

Copies to:  All parties

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHNNEISHA KEMPER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>    Defendants and Respondents. | D059637<br><br><br>(Super. Ct. No. 37-2010-00094707-<br> CU-CR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Luis R. Vargas, Judge.  Affirmed in part, and reversed in part.

Johnneisha Kemper brought a federal civil rights action against San Diego County (County) and the City of San Diego (City), and several of their employees, alleging defendants violated her constitutional rights when they engaged in actions leading to the termination of her parental rights to her daughter.  (42 U.S.C. § 1983 (§ 1983).)  The trial court sustained defendants' demurrers without leave to amend.

We conclude the court properly sustained the demurrer on Kemper's claims against the County and its named employees.  These claims are barred because they

constitute an improper collateral attack on the prior juvenile dependency orders and judgment.  However, we conclude the court erred in sustaining the demurrer on Kemper's claims against the City and its named employees.  These claims are not barred because they were not litigated in the earlier juvenile dependency proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Summary of Kemper's Factual Allegations*

Because we are reviewing a demurrer, we must assume the truth of the operative complaint's properly pleaded factual allegations and the facts implied from those allegations.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

In May 2008, 16-year-old Kemper gave birth to a daughter.  When the baby was about 11 days old, on May 24, 2008, several San Diego police officers (defendant police officers[1]) removed the baby from Kemper's care without a warrant.  At the time, the defendant police officers had "no reasonable or articulable evidence to suggest the infant child was in immediate danger of sustaining severe bodily injury, or that the infant had been abandoned by [Kemper]."  "[T]he infant was in good health" and was not in "need [of] any medical care."  There was no evidence suggesting "the child was in immediate danger of physical or sexual abuse, nor was there any indication that the physical environment posed any threat to the infant's health or safety."

Additionally, when they removed the child, the defendant police officers "were fully aware of where, and to whom, the infant belonged."  It would have been "apparent

_____

[1]     These officers are:  Sergeant Brent Williams, Sergeant Linda Griffin, and Lieutenant Natalie Stone.

2

to any reasonable officer that [Kemper] was the infant's mother and that she had an immediate right to custody and control of the infant. There was no reasonable or articulable evidence to suggest that any other person was entitled to custody of the child . . . , [or that] the infant had been abducted." Additionally, "there was no reasonable or articulable evidence to suggest tha[t] any crime whatsoever had been committed, or that there was any other legal justification for the removal of [Kemper's] child from her care."

Four days later, on May 28, several County social workers (social worker defendants[2]) filed a juvenile dependency petition under Welfare and Institutions Code[3] section 300, subdivision (g), alleging the infant had been abandoned by the mother and that the mother's whereabouts were unknown and reasonable efforts to locate her had been unsuccessful. The petition was signed under penalty of perjury by the social worker defendants.

According to Kemper, the social worker defendants' allegations set forth in the dependency petition were untrue in that when they signed and filed the petition, the social worker defendants had been in contact with Kemper multiple times and knew her cellular phone number and had successfully contacted her at this number. Additionally, the social worker defendants knew where Kemper went to school. The social worker defendants "were fully aware of where, and to whom, [Kemper's] infant belonged; and, they knew

---

[2]    The social worker defendants are: Mark Hood, Mitsuru Ramirez, Tanisha Cowan, Gigi Burns, and Connie Bryan.

[3]    All further statutory references are to the Welfare and Institutions Code, except for references to section 1983 or as otherwise specified.

where and how to get a hold of [Kemper]; and they knew that [Kemper] had absolutely no intention of abandoning her infant child." Kemper claimed the social worker defendants' alleged misrepresentations regarding her whereabouts "caused the continued and unjustified detention of [her] newborn child."

Thereafter, the social worker defendants filed multiple reports, including detention and jurisdictional/disposition reports, allegedly "with the intention that said reports be accepted into evidence and that the contents of those filings be treated as true, when in fact the contents of those reports were false." In each of these reports, the social worker defendants "knowingly made material misstatements of fact, suppressed exculpatory information from the court, fabricated evidence and disclosed it to the court as if it were true, inserted half-truths and omitted critical information that showed many of the purported failures or deficiencies by [Kemper] were in fact the fault of the Social Worker Defendants."

Kemper alleged that: "Ultimately, due in substantial part to the lies and half-truths and other omissions by Social Worker Defendants [Kemper's] parental rights were terminated and she permanently lost custody of her infant child."

B. *Summary of Court of Appeal Opinion*

Although neither party requested the trial court to consider our prior appellate decision upholding the termination of Kemper's parental rights (*In re N.F.* (June 29, 2010, D055922) (*N.F.*)), we have taken judicial notice of the unpublished opinion on our own motion because it is relevant and material to the collateral estoppel and res judicata

4

issues raised by the parties. (See Cal. Rules of Court, rule 8.1115(b); Evid. Code, §§ 452, subd. (d), 459, subd. (a).)[4]

The following relevant background facts were set forth in our prior opinion. (*N.F.*, *supra*, D055922.) In May 2008, a petition was filed alleging that Kemper's infant child was at substantial risk of harm because she was left without any support, and after conducting a search, the social workers did not know her parents' whereabouts. At the detention hearing, the trial court made a prima facie finding on the petition, detained the child in out-of-home care, and ordered the social services agency to "continue searching for the parents." (*Ibid.*) About one month later, on June 18, the court found the section 300, subdivision (g) jurisdictional allegations to be true, assumed jurisdiction over Kemper's child, removed her from parental custody, placed her in foster care, and ordered reunification services. (*N.F., supra.*) Although she had notice, Kemper did not timely appear at this hearing, but about one month later counsel was appointed for her. (*Ibid.*) At the six-month hearing, the court terminated reunification services and set a selection and implementation hearing. (*Ibid.*; see § 366.26.) Kemper filed a notice of intent to file a writ petition challenging this order (see Cal. Rules of Court, rules 8.450, 8.452), but after Kemper's counsel reviewed the record, counsel determined there were no viable issues for review. (*N.F., supra.*) In May and August 2009, Kemper's counsel filed section 388 modification petitions seeking to dismiss the dependency petition based on

---

[4]    We provided the parties an opportunity to file supplemental letter briefs regarding our consideration of the *N.F.* unpublished opinion.

5

Kemper's alleged improved circumstances and based on the court's alleged prior error in not appointing a guardian ad litem. (*Ibid*.) The juvenile court agreed to consider the motions, but ultimately declined to modify its prior orders. (*Ibid*.) The juvenile court found that although a guardian ad litem should have been appointed and this "error was not harmless, . . . the requested modification was not in [the child's] best interests because [Kemper] could not safely parent [her child]." (*Ibid.*) The court thereafter entered a final judgment terminating Kemper's rights. (*Ibid.*)

On appeal, Kemper challenged the court's denial of her modification petitions. (*N.F.*, *supra*, D055922.) We affirmed, concluding that although an "[a]ppointment of a guardian ad litem may have made a difference in the outcome of the jurisdiction and disposition hearings," the juvenile court "acted well within its discretion by denying [Kemper's] request to dismiss the dependency petition and return the case to 'square one,' or alternatively, to place [the child] with her." (*Ibid*.) We also rejected Kemper's argument that reversal was required because her counsel was ineffective by failing to challenge the section 300, subdivision (g) jurisdictional findings in the dependency proceedings and in a writ petition to the Court of Appeal. We specifically found the outcome would not have been different if counsel had raised these issues. We explained: "Regardless of counsel's alleged failings . . . , the Agency was justified in filing a dependency petition, and the court reasonably assumed jurisdiction of [Kemper's child]. [Kemper] left [her] newborn . . . without provision for support, and chose her relationship with father over her relationship with her child. . . . [Kemper's] ongoing irresponsible behavior and lack of motivation to participate in services or establish a relationship [with

6

her child] prevented reunification. Once her situation stabilized and she began to access services, [Kemper] was never able to show she could properly parent [her child]. The remedy [Kemper] seeks—dismissing the petition or placing [her child] with her under a voluntary services contract—is not a viable option. [¶] Despite the fact that this case got off track initially when [Kemper] had no representation, it was ultimately [Kemper's] inability or unwillingness to reunify with [her child] that caused her to lose her parental rights. [Kemper's child] is now two years old and has never lived with [Kemper]. She is thriving in the home of maternal relatives who want to adopt her. [The child] deserves to have her custody status promptly resolved and her placement made permanent and secure." (*N.F., supra.*)

### C. *Legal Claims Alleged in Kemper's Complaint*

Based on the factual allegations of her complaint (which did not include many of the facts set forth in *N.F.*), Kemper alleged a section 1983 federal civil rights claim against the police officer defendants, the social worker defendants, and the public entity defendants.

As to the police officer defendants, Kemper alleged they "were acting under color of state law when they acted and/or conspired to remove Plaintiff's infant daughter from her care without notice, proper reason, authority, or probable cause, and with deliberate indifference to the rights of Plaintiff." She alleged that this conduct violated her constitutional due process rights and her right to familial association under the Fourteenth Amendment.

7

As to the social worker defendants, Kemper alleged they were acting under color of state law "when they filed papers with the Juvenile Dependency Court where such papers were either signed under penalty of perjury and contained knowingly false statements, and/or where such papers were known to be relied on by the dependency court as evidence in the underlying action, and contained knowingly false statements." Kemper alleged the social worker defendants committed these acts "with deliberate indifference" to her rights, and this wrongful conduct violated her constitutional right to familial association and her due process right "not to be subjected to false allegations by the government."

As to both sets of individual defendants, Kemper alleged her rights "were so clearly established that a reasonable agent faced with similar circumstances would have known that their conduct was violative of Plaintiff's rights." Kemper sought compensatory damages (including for "physical and/or mental anxiety and anguish"), punitive damages, and attorney fees.

As to the County and City entity defendants, Kemper alleged these entities maintained policies that caused the constitutional violations, including policies of: (1) detaining/removing children from their parents without adequate notice or an opportunity to be heard and beyond the necessary scope; (2) allowing the filing of reports with false and fabricated evidence; (3) acting with deliberate indifference in failing to provide proper employee training; and (4) allowing the removal and detention of a child without a warrant even if there are no exigent circumstances. Kemper alleged the defendant

8

entities knew or should have known the policies would cause injury to Kemper, and the policies "were the *moving force* behind the constitutional violations alleged."

## D. *Defendants' Demurrers*

Each of the defendants demurred, arguing that California's collateral estoppel and res judicata doctrines barred Kemper from pursuing her section 1983 claims, and alternatively that the claims were barred by the United States Supreme Court decision in *Heck v. Humphrey* (1994) 512 U.S. 477 (*Heck*).)[5] The County defendants also argued the social worker defendants were immune from civil liability arising from their participation in the juvenile dependency process. Additionally, the County argued the claim against it was barred because a prerequisite to its liability is a viable section 1983 claim against a County employee.

After conducting a hearing, the court sustained each defendant's demurrer without leave to amend. With respect to the social worker and police officer defendants, the court found Kemper's claims were barred by California's collateral estoppel doctrine and by the United States Supreme Court's ruling in *Heck, supra*, 512 U.S. 477. With respect to the public entity defendants, the court found Kemper failed to state a cause of action because this claim is dependent on a showing of individual liability under section 1983.

Kemper appeals.

---

[5] Although the City defendants did not initially argue that *Heck* directly applied to the case, it did urge the court to grant the demurrer based on principles articulated in *Heck* and later elaborated on the argument in their reply brief.

DISCUSSION

I. *Generally Applicable Legal Principles*

"A demurrer tests the sufficiency of a plaintiff's complaint by raising questions of law.  [Citation.]  When the trial court sustains a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action.  [Citation.]  We accept as true all properly pleaded material factual allegations of the complaint and other relevant matters that are properly the subject of judicial notice, and we liberally construe all factual allegations of the complaint with a view to substantial justice between the parties.  [Citation.]"  (*Beets v. County of Los Angeles*  (2011) 200 Cal.App.4th 916, 922-923 (*Beets*).)

We are not bound by the trial court's stated reasons and must affirm the judgment if any ground offered in support of the demurrer was well taken.  (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)  We review the court's ruling and not its rationale.  (*Ibid*.)  In evaluating whether the plaintiff adequately stated a section 1983 claim, "dismissal is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle [the plaintiff] to relief.'  [Citations.]"  (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1471 (*Arce*).)

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."  (*Devereaux v. Abbey* (9th Cir. 2001) 263 F.3d 1070, 1074 (*Devereaux*); see *Arce, supra*, 211 Cal.App.4th at p. 1473.)  Section 1983 does not create substantive rights; it provides

10

remedies for violations of rights found elsewhere in the federal Constitution. (*Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 406; *Rutherford v. State of California* (1987) 188 Cal.App.3d 1267, 1287.)

A municipal entity (such as the County or City) can be held liable under section 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690; *Manta Management Corp. v. City of San Bernardino, supra*, 43 Cal.4th at p. 406.) A finding of the individual employee's section 1983 liability is a necessary predicate to the government entity's liability. (*City of Los Angeles v. Heller* (1986) 475 U.S. 796, 799; see *Hinton v. City of Elwood* (10th Cir. 1993) 997 F.2d 774, 782 ["A municipality may not be held liable where there was no underlying constitutional violation by any of its officers"].)

Under these principles, we examine Kemper's section 1983 claim against each set of defendants.

## II. *Kemper's Claim Against Social Worker Defendants*

### A. *Overview*

Kemper's section 1983 claim against the social worker defendants is based on her allegations that the social workers filed court documents falsely stating that Kemper had abandoned her baby and they did not know Kemper's whereabouts. Kemper alleged the social worker defendants in fact had actual knowledge that she had not abandoned her baby and they knew where she was and how to contact her. She alleged the juvenile

11

court relied on these misrepresentations to reach its jurisdictional and dispositional findings, and that "due in substantial part to the lies and half-truths and other omissions by Social Worker Defendants[,] Plaintiff's parental rights were [ultimately] terminated and she permanently lost custody of her infant child." Although these allegations challenge the propriety of the parental termination disposition, Kemper maintains that she is not seeking to overturn the dependency orders or judgment. She states that she instead is seeking only money damages to compensate her for her physical and emotional injuries arising from the social workers' alleged wrongful actions, including the distress resulting from the loss of her child.

A social worker may be held liable under section 1983 based on proof he or she deliberately made false statements in petitions filed with the juvenile dependency courts. (See *Costanich v. Department of Social and Health Services* (9th Cir. 2010) 627 F.3d 1101, 1108, 1110-1111 (*Costanich*); see also *Devereaux, supra*, 263 F.3d at pp. 1074-1075.) "Deliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth Amendment . . . ." (*Costanich, supra*, at p. 1108; see *Beltran v. Santa Clara County* (9th Cir. 2008) 514 F.3d 906, 908 [social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition"].) This is particularly true when the conduct infringes on the parent-child relationship. (See *Stanley v. Illinois* (1972) 405 U.S. 645, 651.)

However, the issue before us is not whether Kemper's allegations satisfy her burden to plead the elements of a section 1983 claim. The social worker defendants

12

demurred to the complaint on the grounds that *even assuming* Kemper's claims potentially state a constitutional violation, they are barred because the lawsuit constitutes an improper collateral attack on the prior judgment and/or the social workers are immune from the claims. As explained below, collateral estoppel principles preclude Kemper from recovering on her section 1983 claim against the social worker defendants because the claim is predicated on the same factual claims that were litigated and decided adversely to her in the prior juvenile dependency proceedings. Based on this conclusion we do not reach the social worker defendants' alternate contentions that the judgment may be affirmed under the related *Heck* rule (*Heck, supra*, 512 U.S. 477) and/or that the social worker defendants are entitled to qualified immunity under the alleged facts.

### B. *Collateral Estoppel*

Res judicata and collateral estoppel doctrines apply to section 1983 actions. (*Allen v. McCurry* (1980) 449 U.S. 90, 94.) State law governs the application of these doctrines in determining the viability of a federal civil rights claim. (*Ayers v. City of Richmond* (9th Cir. 1990) 895 F.2d 1267, 1270; see *Marrese v. American Academy of Orthopaedic Surgeons* (1985) 470 U.S. 373, 380.)

Under California law, the res judicata doctrine has two conceptual aspects. The first, known as claim preclusion, "prevents relitigation of the *same* cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896, italics added.) The social worker defendants did not rely on this theory in moving for the demurrer. Instead, they relied on the second ground for res judicata, commonly referred to as collateral estoppel or issue preclusion,

which precludes the parties from relitigating an issue even if the prior and current causes of action are different. (*Ibid.*, *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.)

Under California law, the collateral estoppel doctrine bars relitigation of an issue decided in a previous proceeding when three elements are established: "(1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; *In re Joshua J.* (1995) 39 Cal.App.4th 984, 993.) The doctrine "is grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.' " (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 864.)

Each of these elements was satisfied in this case.

First, there was a final judgment on the merits in the matter terminating Kemper's parental rights. As this court has found, the determination of an issue by final judgment in a juvenile dependency proceeding is conclusive upon the parties or their privies in a subsequent suit. (*In re Joshua J., supra*, 39 Cal.App.4th at p. 993.) Kemper argues that a dependency court judgment cannot be considered final for purposes of collateral estoppel because juvenile court orders are generally subject to modification. (See § 388; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872.) However, a juvenile court generally has no authority to continue to modify its orders *after* parental rights are terminated. Except for certain exceptions not applicable here, once a court has entered a final judgment

14

terminating parental rights and the judgment is affirmed on appeal, a juvenile court has no jurisdiction to modify this determination with respect to the parent. (§ 366.26, subd. (i)(1).)

Second, Kemper was a party in the dependency proceeding. Although the focus of a dependency proceeding is on the child, a parent served with a notice of the proceeding has the status of a party in the juvenile dependency proceeding. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) "[T]he court exercises *personal* jurisdiction over the parents once proper notice has been given" and has the authority to enter binding orders adjudicating the parents' rights to, and relationship with, the child. (*Ibid*.) A parent's status as a party permits the parent to assert and protect her own constitutional interest in the companionship, care, custody and management of her child. (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 412.)

Third, the identical issue was litigated in the first proceeding. "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] . . . [Citations.] 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 512-513.) Moreover, an *issue* raised and decided in a prior proceeding triggers the collateral estoppel bar even if some factual matters or legal theories that could have been presented with respect to *that* issue were not presented. (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 401-402; see *Clark v. Lesher* (1956) 46 Cal.2d 874, 880-881.)

However, a prior decision does not establish collateral estoppel on issues that could have been raised and decided in the prior proceeding but were not. (*Murphy, supra*, at p. 401.)

In her section 1983 complaint, Kemper alleges the social worker defendants violated her constitutional rights by deliberately and intentionally making false assertions in their dependency court petitions and that based on those misrepresentations the court took jurisdiction over the matter and then continued the out-of-home custody of her daughter, which led to the ultimate termination of her parental rights. However, these issues—whether the social worker defendants made misrepresentations and whether those misrepresentations caused the termination of her rights—were litigated and decided adversely to Kemper in the juvenile dependency proceeding.

By assuming jurisdiction over Kemper's child and denying her modification petitions, the juvenile court found the social worker allegations to be true. Although Kemper was not present at the initial hearings, during the later proceedings Kemper had the full opportunity to challenge the truthfulness of the social worker assertions and present evidence that she had not in fact abandoned her baby and/or that she had provided for the baby's support. Within one month after the court assumed jurisdiction, Kemper was represented by counsel and had numerous opportunities to raise the issue in the dependency proceeding, including in a petition for modification or a writ petition to this court. However, Kemper's counsel—after reviewing the record—made a decision not to challenge the court's earlier findings by a writ petition. Moreover, as stated in our prior opinion, Kemper did specifically later raise these challenges in her section 388 modification petitions. (*N.F., supra*, D055922.) In reviewing the court's denial of the

16

petitions and Kemper's arguments that she was denied the effective assistance of counsel, we specifically found that the social services agency was "justified in filing a dependency petition" and the juvenile court had a reasonable basis to assume jurisdiction over the child and maintain that jurisdiction based on Kemper's conduct. (*Ibid.*) On this undisputed record, Kemper had the full opportunity, and did, raise the issue of the social workers' alleged misrepresentations in the prior proceeding, and those claims were litigated and decided against her. As a result, under collateral estoppel principles, Kemper is precluded from challenging the court's findings in a later action.

Kemper argues that as "*a matter of law*" the social workers' misrepresentations were "not litigated and decided in the juvenile dependency case because . . . the only issue before that court was Kemper's child's best interests." (Italics added.) This assertion is not legally correct. At the jurisdictional hearing (where the court considered the social worker reports regarding Kemper's whereabouts and conduct), the applicable standard was whether the child came within one of section 300's statutory categories, and not the "best interests" of the child. (See § 355, subd. (a); Cal. Rules of Court, rule 5.684(f).) Even if a court may believe a child's best interests would be served by dependency court jurisdiction, a court does not have the authority to assume jurisdiction unless it finds true the allegations that the child fits into one of section 300's statutory categories. The issue common to each of these categories is whether the circumstances at the time of the hearing show the child is subject to a statutorily-defined risk of future harm. (See *In re A.S.* (2011) 202 Cal.App.4th 237, 243-244; *In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

17

In this case, the juvenile court found true the allegations of the jurisdictional petition under section 300, subdivision (g) that Kemper's child was at substantial risk of harm because she was left without any support and the whereabouts of her parents were unknown, and this court made a specific finding that "when these proceedings were initiated, [the social services agency] was justified in filing a dependency petition, and the court reasonably assumed jurisdiction of [Kemper's child]." (*N.F.*, *supra*, D055922.) We made this finding after reviewing the factual record that included Kemper's arguments challenging the truth of the jurisdictional petition (via Kemper's later section 388 petition). The dependency court's findings, affirmed on appeal after Kemper (who was represented by counsel) had the full opportunity to challenge the factual finding through section 388 modification petitions, precludes Kemper from relitigating these same issues in her subsequent federal civil rights lawsuit.

Kemper contends that the issues are not identical because the issue here is whether the social workers *deliberately* fabricated or concealed evidence from the court, whereas the issue in the juvenile dependency proceedings was the truth of the petitions regardless whether the social workers engaged in intentional misconduct. However, based on our conclusion that the dependency court found that the allegations in the petitions were true, it necessarily follows that the court found that the social workers did not make false statements, intentionally or otherwise. The critical point is that Kemper's section 1983 claim is based on her allegations that the social workers made factual misrepresentations and these misrepresentations caused the termination of her parental rights, and these issues were resolved against her in the juvenile dependency proceedings.

18

In this regard, this case is distinguishable from *Costanich, supra*, 627 F.3d 1101, relied upon by Kemper. In that case, the hearing officer had found the social worker reports contained statements that were untrue. (*Id.* at p. 1106.) In the later section 1983 action, the federal court found this factual finding did not preclude the social worker, under the collateral estoppel doctrine, from later arguing she did not *intentionally* make any false statements in her reports and therefore there was no section 1983 liability. (*Id.* at p. 1108, fn. 10.) Because the relevant section 1983 issue in *Costanich* was *not identical* to the issue resolved in the earlier proceedings, the collateral estoppel doctrine did not bar the litigation of the issue. Here, the relevant section 1983 issues in this case—whether the social workers made false statements in their petitions and these statements caused the termination of her rights—were resolved against Kemper in the juvenile dependency proceedings, and therefore the collateral estoppel doctrine does bar the relitigation of these same issues.

Kemper alternatively contends the collateral estoppel bar does not apply because she has alleged in her complaint that the social worker defendants intentionally omitted material information in their juvenile court petitions and made statements in the dependency proceeding that constituted "perjury" and were deliberately false. However, it has long been established that California collateral estoppel law bars the relitigation of an issue even if the opposing party in the prior action committed fraud by suppressing relevant evidence or affirmatively presenting false evidence. (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 10 (*Cedars-Sinai*); accord *Watson v. County of Santa Clara* (N.D. Cal. 2010) 2010 WL 2077171, p. *3.)

19

Kemper argues that *Cedars-Sinai* is inapplicable here because its specific holding concerned the question of whether a state law tort remedy existed for spoliation of evidence. (See *Cedars-Sinai, supra*, 18 Cal.4th at pp. 4, 17-18.) However, *Cedars-Sinai* is relevant because it emphatically reaffirmed the long line of California judicial decisions holding that "under the doctrines of res judicata and collateral estoppel, a judgment may not be collaterally attacked on the ground that evidence was falsified or destroyed." (*Id.* at p. 10.) Quoting from its decision filed more than 100 years earlier, the *Cedars-Sinai* court made clear that California law forbids a collateral attack on a judgment based on a claim the evidence was falsified, concealed, or suppressed: " '[W]hen [the aggrieved party] has a trial, he must be prepared to meet and expose perjury then and there . . . . The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy.' " (*Id.* at p. 11, quoting *Pico v. Cohn* (1891) 91 Cal. 129, 133-134.)

These principles apply to juvenile court dependency proceedings. At these proceedings, parents are provided strong due process safeguards and protections including a right to court-appointed counsel if he or she cannot afford one (§ 317) and the right to notice and an opportunity to be heard before a court can take any action (absent an emergency). (See *In re Josiah S., supra*, 102 Cal.App.4th at p. 412.) Contrary to Kemper's assertions, parents and their counsel have the full opportunity and incentive to litigate all issues concerning allegations made by social workers in juvenile dependency

20

proceedings. Parents are provided full notice of, and juvenile dependency attorneys understand, the potentially severe consequences to the parent-child relationship if parents do not fully assert their rights and challenge governmental claims that they believe to be false.

We reject Kemper's additional argument that the social worker defendants did not meet their burden to show the collateral estoppel bar because they did not request the court to take judicial notice of the record in the juvenile court proceedings. Kemper argues that in evaluating whether issues were "actually litigated" for purposes of a collateral estoppel defense, courts generally must "look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." (*Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 511; see also *Schaefer/Karpf Productions v. CNA Ins. Companies* (1998) 64 Cal.App.4th 1306, 1314.) We agree with this principle, but it is inapplicable here.

In this case, the issue previously litigated did not occur at a jury trial where the identity and scope of the particular issues litigated depends on the specific factual record. Instead the issues were litigated at dependency court hearings where certain specific findings must be made before a court may assume jurisdiction over the child and before a court may remove the child from the parent. Based on Kemper's allegations, the applicable law, and on specific conclusions reached in our prior appellate opinion, we are satisfied that the issue of the truth of the social workers' assertions was raised, submitted for decision, and decided against Kemper at the jurisdictional and dispositional hearings, as well as the proceedings on Kemper's modification petitions. Because Kemper alleges

21

that the social worker defendants falsely alleged in the jurisdictional petition that she had abandoned her child and that the court assumed jurisdiction based (at least in part) on that false allegation, the inescapable conclusion is that the court found the social worker allegations to be true and thus the issue of the falsity of the representations was decided against Kemper. This factual conclusion precludes Kemper from relitigating the issue in her section 1983 damages action.

In this regard, plaintiff's reliance on *Beets, supra*, 200 Cal.App.4th 916 is misplaced. In *Beets*, the court found the identical-issue element of the collateral estoppel defense *was* satisfied based on the allegations of the current complaint and the law showing that the jury in the first trial had to make certain findings in order to reach its conclusions. (*Id.* at p. 927.) However, the court found the same-party element was not satisfied because the party against whom the collateral estoppel defense was asserted was not a party in the first proceeding and there was an incomplete record to show that the interests of the party sought to be estopped were adequately represented in the first trial. (*Id.* at pp. 927-928.)

With respect to the identical-issue element, *Beets* is similar to this case because we can glean from the allegations of the current complaint, our prior opinion affirming the dependency judgment, and the applicable law that the identical issue was decided adversely to the plaintiff in the first proceeding. However, this case is different from *Beets* because Kemper was a party in both proceedings; thus there is no need to examine the record to determine whether Kemper's interests were adequately protected by the litigating party.

Kemper also argues that collateral estoppel does not apply because a "section 1983 claim could never be litigated in [the dependency] forum because the [juvenile court] lacks jurisdiction over such claims . . . ." This argument reflects a misunderstanding of the collateral estoppel (issue-preclusion) doctrine. The doctrine does not require that the cause of action be the same or that the party could have obtained the same relief sought in the second action. Instead, " '[t]he "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' " (*Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 512.) Moreover, collateral estoppel applies if the issue was raised, submitted for determination, and decided in the prior proceeding, even if "some factual matters or legal theories that could have been presented with respect to that issue were not presented." (*Bridgeford v. Pacific Health Corp*. (2012) 202 Cal.App.4th 1034, 1042.)

Kemper's reliance on Government Code section 820.21 is also unhelpful because this statute does not concern the application of collateral estoppel. The code section provides that juvenile court social workers are not immune from claims based on "[p]erjury" or "[f]abrication of evidence." (Gov. Code, § 820.21, subd. (a)(1), (2).) Even assuming there is no applicable immunity for the social worker defendants, Kemper's claim must be dismissed if it is barred by California's collateral estoppel doctrine.[6]

---

6    Based on this conclusion, we decline Kemper's request that we take judicial notice of the legislative history underlying the statutory immunity provisions.

III.  *Kemper's Claim Against Police Officer Defendants*

Kemper brought her section 1983 claim against the police officer defendants based solely on the officers' removing her infant child from her custody without prior judicial authorization.

Under the Fourth and Fourteenth Amendments of the United States Constitution, government officials are prohibited from removing children from their parents' custody without a warrant or other judicial preauthorization unless the official has " 'reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.' " (*Arce, supra*, 211 Cal.App.4th at pp. 1473-1474.)  Officials violate the Fourteenth Amendment "if they remove a child from the home absent 'information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." ' " (*Rogers v. County of San Joaquin* (9th Cir. 2007) 487 F.3d 1288, 1294.)

These rights are based on the settled principles that " ' "[p]arents and children have a well-elaborated constitutional right to live together without governmental interference" ' " and that " ' "parents will not be separated from their children without due process of law except in emergencies."  [Citation.]' " (*Arce, supra*, 211 Cal.App.4th at p. 1473.)  This " 'right to family association' " (*ibid.*) requires "[g]overnment officials . . . to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the

scope of the intrusion is reasonably necessary to avert that specific injury.' [Citation.]" (*Mabe v. San Bernardino County Department of Public Social Services* (9th Cir. 2001) 237 F.3d 1101, 1106 (*Mabe*).) Officials " 'cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued, particularly where it is not clear that a crime has been—or will be—committed.' " (*Arce, supra*, 211 Cal.App.4th at p. 1474.)

Kemper alleged that the police officer defendants "without cause, a warrant, a court order, or exigent circumstances seized, detained and removed [Kemper's] infant child from her care" and that the police officers had no information at that time to suggest the child had been abandoned, was not being properly cared for, was in immediate danger of sustaining severe bodily injury, or was in need of immediate medical attention.

The police officer defendants do not challenge that these allegations, if proved, support a cause of action that they violated Kemper's constitutional rights to family association and due process. However, they argue the court properly sustained the demurrer without leave to amend because the claim is barred by: (1) collateral estoppel principles; (2) the United States Supreme Court's *Heck* decision; and (3) immunity rules. Each of these arguments is without merit.

First, unlike the social worker defendants, the police officer defendants did not meet their burden to show Kemper's factual claim alleged in the section 1983 action was necessarily litigated in the juvenile dependency proceedings and/or that the issues litigated were identical. Kemper's section 1983 claim against the police officer defendants is based on her assertion that *at the time* of the seizure these defendants did

25

not have reasonable cause to believe a sufficient exigency existed to support the taking of the child without a warrant or prior judicial authorization. The police officer defendants did not request the court to take judicial notice of the underlying records, and thus there is no basis upon which we can find the issue was litigated in the proceeding.

Moreover, we cannot infer that the issue was litigated because the standards for removal of a child by a police officer without a warrant and without judicial authorization are different from the standards governing the court's determination at the detention hearing or any other later dependency proceeding. Although a detention hearing was held shortly after the officers seized Kemper's baby, the court at a detention hearing does not necessarily rule on the issue whether the police officers properly detained the child without prior judicial authorization. Section 315 provides: "If a minor has been taken into custody under this article and not released to a parent or guardian, the juvenile court shall hold a [detention] hearing . . . to determine whether the minor shall be *further* detained." (Italics added; see also § 319, subd. (b).) Because the issue at a detention hearing concerns the risk to the child in the future, the issue whether the police officers had the right to *remove* the child from parental custody without a warrant and without prior judicial authorization is not necessarily litigated. (See *Mabe, supra*, 237 F.3d at p. 1110 ["[t]he [later] juvenile court's findings are not relevant to whether a sufficient exigency existed at the time of the removal to justify the warrantless action because such an inquiry is to be based on the information that [the officer] had at the time"]; *Anderson-Francois v. County of Sonoma* (N.D.Cal. 2009) 2009 WL 1458240, p. *6 [rejecting argument that a claim challenging the initial warrantless removal of a child was barred by

26

findings during later juvenile dependency proceedings], aff'd (9th Cir. 2011) 415 Fed.Appx. 6.)

The police officer defendants alternatively argue that Kemper's claim is barred by the United States Supreme Court's *Heck* decision. (*Heck, supra*, 512 U.S. 477.) In *Heck*, the court held that "when a state prisoner seeks damages in a [section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." (*Id.* at p. 487; see *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 893-895; see also *Guerrero v. Gates* (9th Cir. 2006) 442 F.3d 697, 703.)

The *Heck* court's primary rationale was its concern that state prisoners should not be permitted to challenge alleged unconstitutional treatment at the hands of state officials through civil lawsuits and thus avoid the stricter exhaustion requirements of the parallel federal habeas corpus remedy. (*Heck, supra*, 512 U.S. at pp. 480-489; see *Huftile v. Miccio-Fonseca* (9th Cir. 2005) 410 F.3d 1136, 1138-1141 ["*Heck*'s favorable termination rule was intended to prevent a person in custody from using § 1983 to circumvent the more stringent requirements for habeas corpus"]; see also *Beets, supra*, 200 Cal.App.4th at p. 924.) Based on this rationale and a later concurring opinion by Justice Souter (see *Spencer v. Kemna* (1998) 523 U.S. 1, 19, 20-21), some federal courts have interpreted *Heck* as applying only when the section 1983 plaintiff is still in custody and has a habeas remedy. (See *Nonnette v. Small* (9th Cir. 2002) 316 F.3d 872, 876-877.) Moreover, one federal district court in an unpublished decision recently held that *Heck*

27

did not apply to preclude a section 1983 claim by a parent challenging final dependency court determinations.  (*Anderson v. District Attorney Office* (S.D.Cal. 2011) 2011 WL 6013274, p. *5.)  However, the courts have not reached consistent determinations on the issues and the reach of *Heck* remains "an open question."  (*Cole v. Doe 1 Thru 2 Officers of the City of Emeryville Police Dept.* (N.D.Cal. 2005) 387 F.Supp.2d 1084, 1092.)

In this case, we need not determine *Heck's* precise scope as it applies to juvenile dependency proceedings because its holding does not preclude Kemper's claim against the police officer defendants even if the decision or an analogous principle applied.  The *Heck* court expressly recognized that its rule barring a section 1983 action challenging an earlier judgment is inapplicable if "the plaintiff's [section 1983] action, even if successful, will *not* demonstrate the invalidity of any outstanding . . . judgment against the plaintiff . . . ."  (*Heck, supra*, 512 U.S. at p. 487; see *Taylor v. U.S. Prob. Office* (D.C. Cir. 2005) 409 F.3d 426, 427 [*Heck's* "application is limited to suits that, if successful, would *necessarily* imply the invalidity of the plaintiff's conviction or sentence . . ."], italics added.)  "*Heck* limits a narrow class of civil rights actions when allowing the action to proceed would *necessarily* challenge the legitimacy of the undisturbed conviction." (*Truong v. Orange County Sheriff's Dept*. (2005) 129 Cal.App.4th 1423, 1429, italics added.)

Here, even assuming Kemper is successful in showing that the police officer defendants had no reasonable basis for removing her child without obtaining a warrant, that conclusion would not imply the invalidity of the underlying dependency court orders or judgment terminating her rights.  In asserting that the officers committed wrongful acts

28

by detaining her child without a warrant, Kemper seeks damages for *this* intrusion.  Even if the police officers erred by failing to obtain a warrant before detaining the child, this finding does not necessarily affect the validity of the juvenile court's later orders that *further* detention was necessary because of a risk of harm to the child.  Because Kemper's claims against the police officer defendants concern only the officers' initial seizure of the child without a warrant, the claim does not necessarily challenge the validity of the subsequent juvenile court orders and judgment.  Thus, even assuming the doctrine applies, *Heck* is factually inapplicable based on the allegations of Kemper's complaint.

We also reject the police officer defendants' contention that the judgment may be affirmed on the basis of qualified immunity.  First, they forfeited this contention by failing to raise it as a ground for their demurrer in the proceedings below.  Second, the argument fails on its merits because Kemper has pled sufficient facts showing the police officers are not entitled to a qualified immunity defense.

Under section 1983, government officials are generally entitled to "qualified immunity," which "shields [them] from liability for civil damages if (1) the law governing the official's conduct was clearly established; and (2) under that law, the official objectively could have believed that her conduct was lawful."  (*Mabe, supra*, 237 F.3d at p. 1106.)

The police officer defendants do not challenge that the "clearly established" requirement is satisfied here.  We agree.  At the time the police officer defendants removed Kemper's child from her custody without a warrant, it had been clearly established that a parent could not be summarily deprived of her child's custody except

29

when the child is in imminent danger of serious bodily injury. (*Mabe, supra*, 237 F.3d at pp. 1107-1108; accord, *Ram v. Rubin* (9th Cir. 1997) 118 F.3d 1306, 1310.)

But the police officer defendants argue they had "reasonable cause" to believe Kemper's infant daughter was in imminent danger to necessitate a warrantless seizure. In asserting this argument, defendants ignore that we are reviewing the case at the pleading stage. Even assuming the factual record ultimately supports defendants' arguments that they had reasonable cause to believe exigent circumstances existed in the situation, the issue before us is whether the court properly sustained the demurrer, assuming all allegations of the complaint to be true. Kemper's complaint alleges that the police officer defendants had no reasonable cause to believe Kemper's child was in imminent danger of serious bodily injury and a delay to obtain a warrant would not have placed the child in any danger. Assuming these facts to be true, defendants would not be entitled to qualified immunity.

Generally "determining whether an official had 'reasonable cause to believe exigent circumstances existed in a given situation . . . [is a] "question[ ] of fact to be determined by a jury." [Citation.]' [Citations.] . . . '[Factual questions] may be resolved [at the pleadings stage] only when there is only one legitimate inference to be drawn from the allegations of the complaint.' [Citations.]" (*Arce, supra*, 211 Cal.App.4th at p. 1475; see *Mabe, supra*, 237 F.3d at p. 1108; *TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1368.)

IV. *Kemper's Claim Against Public Entity Defendants*

A municipality (including a city or county) can be held liable for federal civil rights violations if its policy or custom motivated the commission of a constitutional violation. (See *Monell v. New York City Dept. of Social Services, supra*, 436 U.S. at pp. 690-691.) However, a prerequisite to this liability is a successful claim against the public entity's employee for violating the plaintiff's constitutional right. (See *City of Los Angeles v. Heller, supra*, 475 U.S. at p. 799; *Forrester v. City of San Diego* (9th Cir. 1994) 25 F.3d 804, 808-809.)

The County demurred to the complaint based on its argument that its employees were not liable under section 1983. The court properly sustained the County's demurrer because we have found the claims against the named County employees (the social worker defendants) are barred by the collateral estoppel doctrine. However, we cannot uphold the demurrer against the City on this same basis because we are reversing the dismissal of Kemper's claims against the City's employees. The City does not suggest any other basis for affirming the demurrer on Kemper's claims against it. We thus reverse the judgment with respect to Kemper's claims against the City.

DISPOSITION

Judgment against the County and the social worker defendants is affirmed.

Judgment against the City and the police officer defendants is reversed.  The parties to

bear their own costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

32