Filed 3/3/15  Jaquez v. City of Victorville CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAROLE JAQUEZ et al., | |
| Plaintiffs and Appellants, | G050278 |
| v. | (Super. Ct. No. CIVVS1202817) |
| CITY OF VICTORVILLE, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Michael A. Sachs, Judge.  Affirmed.

Law Office of Robert D. Conaway and Robert D. Conaway for Plaintiffs and Appellants.

Graves & King, Harvey W. Wimer III and Dennis J. Mahoney for Defendant and Respondent.

\*        \*        \*

## INTRODUCTION

The City of Victorville (the City), like many municipalities in California, has installed an automated traffic enforcement system (ATES), commonly called a "red light traffic camera" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 262 (*Goldsmith*)), at selected intersections. The City's ATES's are operated and maintained by Redflex Traffic Systems, Inc. (Redflex). Each of the named plaintiffs—Carole Jaquez, John Macias, and Michael Curran (collectively, Plaintiffs)—was cited for failing to stop at a red light monitored by an ATES in the City in violation of Vehicle Code section 21453. The citations were issued based on photographic images produced by an ATES.

Plaintiffs brought this lawsuit against the City pursuant to 28 United States Code section 1983 (section 1983), alleging that use of the ATES violated their rights guaranteed under the confrontation, due process, and equal protection clauses of the United States Constitution and the Fourth Amendment to the United States Constitution. The City demurred to the first amended complaint (the Complaint) on the ground it failed to state facts sufficient to state a cause of action and was uncertain. The trial court sustained without leave to amend the City's demurrer, and Plaintiffs appeal from the resulting judgment of dismissal.

We affirm. The Complaint failed to state a cause of action for violation of civil rights or declaratory relief, and Plaintiffs have not sought leave to amend. *Goldsmith*, in which the California Supreme Court held that ATES-generated evidence is not inherently testimonial and is not hearsay, resolves their constitutional claims against Plaintiffs. In addition, Plaintiffs failed to state a claim under section 1983 based on equal protection and malicious prosecution, and there is no private right of action by which they can challenge the use of strobes at intersections, the subject of the declaratory relief cause of action.

## BACKGROUND: STATUTORY AUTHORIZATION OF ATES

Local governmental agencies are authorized by statute to equip a traffic intersection with an ATES if it meets certain requirements. (Veh. Code, § 21455.5.) The ATES must be identified by signs visible to approaching traffic that clearly indicate the ATES's presence, and the traffic signal light governing the intersection must have a minimum yellow light change interval as set by the state Department of Transportation for the designated approach speed. (*Id.*, § 21455.7.)

A city council or county board of supervisors proposing to install an ATES within its jurisdiction must conduct a public hearing on the proposal before entering into a contract for the use of an ATES. (Veh. Code, § 21455.6, subd. (a).) If the proposal is adopted, the local jurisdiction must, at each affected intersection, "commence a program to issue only warning notices for 30 days" and must "also make a public announcement of the automated traffic enforcement system at least 30 days prior to the commencement of the enforcement program." (*Id.*, § 21455.5, subd. (b).)

"Only a governmental agency, in cooperation with a law enforcement agency, may operate" an ATES. (Veh. Code, § 21455.5, subd. (c).) To operate an ATES, the governmental agency, in cooperation with law enforcement, must develop uniform guidelines for screening and issuing violation citations, and for processing and storing confidential information. (*Id.*, § 21455.5, subd. (c)(1).) The governmental agency must establish procedures to ensure compliance with such guidelines. (*Ibid.*) The governmental agency, in cooperation with a law enforcement agency, must also (a) establish guidelines for selection of a location, (b) ensure that the equipment is regularly inspected, (c) certify that the equipment is properly installed and calibrated and is operating properly, (d) regularly inspect and maintain the warning signs, (e) oversee the establishment or change of signal phases and signal timing, and (f) maintain controls

3

necessary to ensure that only those citations that have been reviewed and approved by law enforcement are delivered to violators. (*Id.*, § 21455.5, subd. (c)(2)(A)-(F).)

The governmental agency may contract out the described operational activities or duties "if it maintains overall control and supervision of the system." (Veh. Code, § 21455.5, subd. (d).) The agency may not contract out to "the manufacturer or supplier of the automated traffic enforcement system" certain of the described duties. (*Ibid.*) The only activities that may be contracted out to the ATES manufacturer or supplier are "[e]nsuring that the equipment is regularly inspected" (*id.*, § 21455.5, subd. (c)(2)(B)) and "[c]ertifying that the equipment is properly installed and calibrated, and is operating properly" (*id.*, § 21455.5, subd. (c)(2)(C)). (*Id.*, § 21455.5, subd. (d).)

### ALLEGATIONS

The Complaint is lengthy, rambling, and often incoherent. We must nonetheless accept the well-pleaded facts, as best as we can make of them, as true. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

The underlying alleged facts are as follows:

Macias was cited for violating Vehicle Code section 21453. He retained counsel and challenged the citation. At trial, his counsel objected to evidence generated by an ATES. After losing at trial, Macias appealed, and obtained a reversal of the conviction. The San Bernardino County Superior Court Appellate Division issued an opinion which "advised the defendant City that the [Redflex] photo evidence being used through the City's Officers was insufficient to sustain a conviction for a red light violation and for the court to dismiss the charges against Macias."

Jaquez was cited for violating Vehicle Code section 21453 based on photographic images generated by an ATES. Her citation was issued after the San Bernardino County Superior Court Appellate Division reversed Macias's conviction. Jaquez challenged the citation and showed the appellate division's opinion to the trial

4

court and the prosecutor. Her challenge failed, and she was convicted. She did not appeal the conviction.

Curran was cited for violating Vehicle Code section 21453 based on photographic images generated by an ATES. His citation was issued after the San Bernardino County Superior Court Appellate Division reversed Macias's conviction. Curran retained counsel and challenged the citation. Counsel demanded that the prosecution produce at trial witnesses with personal knowledge of "the alleged factual and technological basis for the red light citation." The charges thereafter were dismissed.

The Complaint alleged the "camera technology & data service" used to monitor red light violations in the City "uses strobes adjacent to the signal indications." Such strobes, the Complaint alleged, are banned by the Manual of Uniform Traffic Control Devices (2009 ed.) section 4D.06, available at <http://mutcd.fhwa.dot.gov/htm/2009/part4/part4d.htm> (as of Mar. 3, 2015) (MUTCD), and, therefore, Plaintiffs' traffic citations and all traffic citations resulting from the City's ATES's are unlawful.

Plaintiffs brought the Complaint on behalf of themselves and "on behalf of all those similarly situated . . . who have received traffic citations for alleged red light violations under California Vehicle Code Section 21453 et seq, due to the policy, custom and practice of City by and through the City Police in violation of and in gross and wilful disregard of plaintiffs' rights as will be set forth hereinafter."

The Complaint alleged the ATES evidence was "inherently testimonial" and must be authenticated by Redflex witnesses, and that the failure to produce Redflex witnesses at trial violated Plaintiffs' rights under the due process clause of the Fifth Amendment, and the confrontation clause of the Sixth Amendment, to the United States Constitution. The Complaint alleged that Plaintiffs' traffic citations were issued without probable cause, in violation of the Fourth Amendment, because a police officer did not witness the alleged traffic violations. The Complaint included an equal protection claim

5

and a malicious prosecution claim alleging Macias was prosecuted without probable cause.

The Complaint asserted four causes of action. The first three causes of action were for violation of civil rights pursuant to section 1983 and were subtitled "Monell Claim" (boldface & some capitalization omitted) after *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658. Those causes of action alleged the City employs police officers who testify at "red light camera ticket hearings" but "have never seen a single person they are testifying against personally run a red light." These officers regularly testify without personal knowledge and without knowing "the accuracy &/or functionality of the software and hardware technology being used for each violation at the time the images are allegedly being captured." The Complaint alleged the City had a duty to bring representatives from Redflex with personal knowledge of the ATES to testify at trial.

The first cause of action alleged the City knew the testifying police officers lacked personal knowledge, but followed a custom, policy, or practice that did not treat the photographic images generated by the ATES as "inherently testimonial" or as testimonial "writings" requiring authentication at trial. The City's custom, policy, or practice "was fraught with constitutionally violative activity" and "impacted retirees and/or minorities and/or people on fixed incomes unable to hire lawyers."

The second cause of action alleged the City did not train its police representatives to provide or arrange for witnesses who could authenticate, and lay the necessary foundation for the admission of, photographic images generated by each ATES.

The third cause of action alleged the City employs police officers who prosecute red light tickets, make probable cause decisions "based on a data feed they have no way of knowing . . . is reliable," and testify at trial even though they lack personal knowledge of the facts depicted and "the accuracy &/or functionality of the

6

software and hardware technology being used for each violation." The Complaint alleged the City had a duty to produce Redflex witnesses at trials of traffic citations but, instead, the City followed "a custom, practice and policy that had successfully impacted retirees, minorities and people on a variety of people on fixed incomes unable to hire lawyers into being found guilty and forced to pay a fine from a process that was fraught with constitutionally violative activity."

The fourth cause of action, for declaratory relief, sought a declaration that (1) the City's use of strobe lights violates the MUTCD, which is found at 23 Code of Federal Regulations part 655.603 (2015), and is "a prohibited technology"; (2) "[u]se of the video data without authenticating same, laying foundation, producing witnesses with personal knowledge . . . is unconstitutional conduct"; (3) the City's methods of prosecuting the red light camera citations violates the Sixth Amendment to the United States Constitution because it places the burden on the defendant to call witnesses and "make the 'writing' (the pictures or videos) reliable."

STANDARD OF REVIEW

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We give the Complaint a reasonable interpretation and treat the demurrer as admitting all material facts that were properly pleaded. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543.)

The trial court sustained the City's demurrer on two grounds: (1) none of Plaintiffs had standing to sue and (2) "evidentiary decisions about which the complaint is made were made by the prosecuting authority or by the Court, and not by the . . . C[ity]." However, "'[w]e affirm the judgment if it is correct on any ground stated in the demurrer,

7

regardless of the trial court's stated reasons. [Citation.]' [Citation.]" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.) In addition to the grounds sustained by the trial court, the City's demurrer was made broadly on the ground the Complaint did not allege facts sufficient to constitute a cause of action. (See Code Civ. Proc., § 430.10, subd. (e).)

## DISCUSSION

### I.

### Standing

First, we address the City's contention that none of Plaintiffs has standing to bring a civil rights action.

Civil rights actions cannot call into question undisturbed criminal convictions. (*Heck v. Humphrey* (1994) 512 U.S. 477, 486-487.) "Thus, in order to maintain a claim for damages under section 1983 for harm caused by actions, which, if they were unlawful, would render a conviction invalid, the plaintiff must prove the conviction had been reversed or otherwise expunged." (*Truong v. Orange County Sheriff's Dept.* (2005) 129 Cal.App.4th 1423, 1427, citing *Heck v. Humphrey*, *supra*, 512 U.S. at pp. 486-487.) An action under section 1983 may proceed without reversal or expungement of the criminal conviction only if the acts alleged to constitute civil rights violations do not call into question the validity of that conviction. (*Truong v. Orange County Sheriff's Dept., supra*, at p. 1428, citing *Sanford v. Motts* (9th Cir. 2001) 258 F.3d 1117, 1119-1120.)

Jaquez did not appeal from her conviction for violating Vehicle Code section 21453. With one exception, her civil rights claim called into question the validity of that conviction by asserting the photographic images generated by the ATES were not properly authenticated at trial. Jaquez's section 1983 claim based on equal protection does not appear to call into question the validity of her conviction for violating

8

section 21453. Jaquez therefore, at most, has standing only to pursue her claim for an equal protection violation.

The charge against Curran was dismissed before trial. His section 1983 claim was based on the theory that the City had a custom, policy, or practice undertaken with the intention, and having the result, of failing to properly authenticate *at trial* photographs generated by the ATES. Since Curran never went to trial, he did not suffer the alleged civil rights violation and lacks standing.

Macias went to trial, appealed his conviction for violating Vehicle Code section 21453, and obtained a reversal. He therefore has standing to pursue a section 1983 claim.

**II.**

**Confrontation Clause, Due Process Clause,
and Probable Cause**

Plaintiffs' claims based on the confrontation clause, the due process clause, and Fourth Amendment probable cause are resolved by the recent California Supreme Court decision in *Goldsmith*, *supra*, 59 Cal.4th 258, which addressed significant issues of authenticating ATES evidence. We invited the parties to submit supplemental briefing on *Goldsmith*, which was decided after Plaintiffs filed their reply brief.

A. *The* Goldsmith *Opinion*

In *Goldsmith*, *supra*, 59 Cal.4th 258, the California Supreme Court concluded the ATES evidence in that case was properly authenticated, was not testimonial, and did not constitute hearsay. In *Goldsmith*, a notice to appear was issued to the defendant pursuant to the City of Inglewood's implementation of an ATES. (*Id.* at p. 264.) The citation alleged the defendant failed to stop at a red traffic light. (*Ibid.*) The defendant challenged the citation. (*Ibid.*) The only witness at trial was an Inglewood Police Department investigator, who testified he was assigned to the traffic division in red light camera enforcement and had more than six years of experience in that

9

assignment.  (*Ibid.*)  The investigator testified the defendant's citation was the result of the red light camera program first implemented in 2003, and the City of Inglewood's ATES, though operated by the police department, was maintained by Redflex.  (*Ibid.*) "Based on his experience and the knowledge that he acquired from city engineers regarding how the traffic signals and system work and from Redflex regarding how the ATES works, [the investigator] testified that the computer-based digital camera system operates 'independently' and records events occurring within an intersection after the traffic signal has turned red.  [The investigator] stated that the ATES information is stored as it is 'reported' on the hard disc of a computer at the scene.  According to [the investigator], Redflex technicians retrieve that computerized information periodically throughout the day through an Internet connection.  A police officer then reviews all photographs before a citation is printed or mailed."  (*Ibid.*)

The investigator then explained in detail how the photographs and video images are recorded and produced by the ATES.  (*Goldsmith*, *supra*, 59 Cal.4th at p. 264.)  He explained the ATES camera produces three photographs.  (*Ibid.*)  The first photograph showed the vehicle at or before the crosswalk or limit line for the intersection with the traffic signal shown in the background during its red phase.  (*Ibid.*)  The second photograph showed the vehicle within the intersection either in the process of making a right turn or going straight through the intersection, and the third photograph showed the vehicle's license plate.  (*Id.* at pp. 264-265.)  A data bar imprinted on all of the photographs by the ATES showed the date, time, location, and length of time in which the light had been red at the time of the photograph.  (*Id.* at p. 265.)  In addition, a 12-second video shows the approach and progression of the vehicle through the intersection.  (*Ibid.*)

Based on the ATES evidence, the investigator testified to the specific facts surrounding the defendant's traffic violation.  (*Goldsmith*, *supra*, 59 Cal.4th at p. 265.) The trial court overruled the defendant's objections to the investigator's testimony and,

10

based on the evidence, found beyond a reasonable doubt the defendant failed to stop at a red light. (*Ibid.*)

The Supreme Court affirmed in an opinion approving the authentication used in the trial court. (*Goldsmith*, *supra*, 59 Cal.4th at p. 266.) The Supreme Court started with the proposition that photographs and video recordings imprinted with data are writings which must be authenticated before they may be admitted in evidence (*id.* at pp. 266-267), and a photograph or video recording typically is authenticated by showing "it is a fair and accurate representation of the scene depicted" (*id.* at p. 267). Such authentication may be provided by a presumption. (*Id.* at p. 268.) Evidence Code sections 1552 and 1553 provide presumptions for the existence and content of computer information and digital images that the printed versions purport to represent. (*Goldsmith*, *supra*, at p. 268.) These presumptions apply to images and data generated by ATES and support a finding, in the absence of contrary evidence, that "the printed versions of ATES images and data are accurate representations of the images and data stored in the ATES equipment." (*Id.* at p. 269.) These presumptions do not violate a defendant's constitutional right to confront witnesses. (*Id.* at pp. 269-270.)

The Supreme Court explained the presumptions of Evidence Code sections 1552 and 1553 do not in themselves fully supply the necessary foundation for admission of ATES evidence, and it is necessary to authenticate the evidence in compliance with Evidence Code section 1401. (*Goldsmith*, *supra*, 59 Cal.4th at p. 271.) The court concluded the investigator's testimony provided the necessary authentication: "[The investigator]'s testimony was adequate to show that the ATES photographs at issue were from Inglewood's ATES equipment located at the corner of Centinela and Beach Avenues. From his explanation regarding the independent operation of the ATES camera system, it can be reasonably inferred that the ATES system automatically and contemporaneously recorded the images of the intersection and the data imprinted on the photographs when it was triggered. [The investigator] was not asked anything about the

11

city's or the police department's records or supervision of Redflex's maintenance or certification of the equipment. Defendant does not argue that [the investigator]'s testimony was insufficient to demonstrate that the evidence was properly received in the normal course and manner of Inglewood's operation of its ATES program. Finally, we note that the content of the photographs themselves may be considered and here the content supplied further support for a finding that the images were genuine." (*Id.* at p. 271, fn. omitted.) The court rejected the defendant's argument that testimony of a Redflex technician or another witness with special expertise in the operation and maintenance of the ATES computers was required to authenticate the ATES evidence. (*Id.* at p. 272.)

The Supreme Court also concluded the ATES evidence did not constitute hearsay. (*Goldsmith*, *supra*, 59 Cal.4th at pp. 273-274.) "The ATES-generated photographs and video introduced here as substantive evidence of defendant's infraction are not statements of a person as defined by the Evidence Code. [Citations.] Therefore, they do not constitute hearsay as statutorily defined." (*Id.* at p. 274.) Since ATES evidence is not hearsay, the Supreme Court rejected the defendant's confrontation clause claims. (*Id.* at p. 275.)

B. *Application of* Goldsmith *to Plaintiffs' Claims*

*Goldsmith* resolves the following claims against Plaintiffs:

1. ATES evidence is inherently testimonial, and the City perpetuated a policy, custom, or practice of not treating ATES evidence as such. The Supreme Court concluded: "The ATES evidence was offered as substantive proof of defendant's violation, not as demonstrative evidence supporting the testimony of a percipient witness to her alleged violation. We have long approved the substantive use of photographs as essentially a 'silent witness' to the content of the photographs." (*Goldsmith*, *supra*, 59 Cal.4th at p. 267.) The Supreme Court concluded ATES evidence does not constitute hearsay and is not testimonial. (*Id.* at pp. 274-275.)

12

2. Admission of the ATES evidence here violated the confrontation clause of the Sixth Amendment. In *Goldsmith*, *supra*, 59 Cal.4th at page 275, the Supreme Court rejected that assertion: "[O]ur determination that the ATES evidence is not hearsay necessarily requires the rejection of defendant's confrontation claims."

3. ATES evidence must be authenticated by a Redflex technician, and, therefore, the City had an obligation to produce Redflex technicians to testify at trial. Those propositions were squarely rejected in *Goldsmith*, *supra*, 59 Cal.4th at page 272: "We disagree that the testimony of a Redflex technician or other witness with special expertise in the operation and maintenance of the ATES computers was required as a prerequisite for authentication of the ATES evidence."

4. The City maintained an unlawful policy of employing police officers who testify at "red light camera ticket hearings" but "have never seen a single person they are testifying against personally run a red light." The Supreme Court held in *Goldsmith* that a police officer, who has the requisite knowledge about ATES, may testify to authenticate ATES testimony without having witnessed the traffic violation. (*Goldsmith*, *supra*, 59 Cal.4th at pp. 271-272.)

5. The City maintained a policy of employing police officers who testify at traffic hearings without knowing "the accuracy &/or functionality of the software and hardware technology being used for each violation at the time the images are allegedly being captured." In *Goldsmith*, the police investigator did not testify about Redflex's maintenance or certification of the ATES equipment or about the ATES's "accuracy &/or functionality of the software and hardware technology." The Supreme Court held the investigator's testimony was adequate to authenticate the ATES evidence. (*Goldsmith*, *supra*, 59 Cal.4th at p. 271.)

6. The City failed to train its police representatives that they had to produce witnesses to testify at trial that the ATES equipment, cameras, computer systems, signals, and signal interfaces were operating properly and that Redflex did not

13

"degrade or alter the data." In *Goldsmith*, *supra*, 59 Cal.4th at page 272, the court stated: "[T]he record contains no evidence that the ATES evidence was materially altered, enhanced, edited or otherwise changed; rather it consisted of entirely automatically produced photos and video and contemporaneously recorded data. No elaborate showing of accuracy is required. (See 2 [Broun, ]McCormick [on Evidence (7th ed. 2013)] § 227, p. 111 [accuracy of an individual computer's basic operations will not be scrutinized unless specifically challenged, and even perceived errors go to the weight of the evidence, not its admissibility].) We decline to require a greater showing of authentication for the admissibility of digital images merely because in theory they can be manipulated. [Citation.] We have not required testimony regarding the '"acceptability, accuracy, maintenance, and reliability of . . . computer hardware and software"' in similar situations. [Citations.] The standard foundational showing for authentication of a photograph, video, or other writing will suffice for ATES images and data information."

7. A traffic citation issued outside the presence of a police officer lacks probable cause and violates equal protection. Although the Supreme Court did not directly address this issue in *Goldsmith*, it did conclude that ATES evidence is neither testimonial nor hearsay and may be authenticated by a police officer who did not witness the Vehicle Code violation. Issuance of a traffic citation may, therefore, be based on photographs or a video generated by ATES if a police officer reviewed the photographs and/or video and, based on that review, made the decision to issue the citation.

*Goldsmith* thus resolves against Plaintiffs their claims arising out of the confrontation clause, the due process clause, and the Fourth Amendment requirement of probable cause. The Complaint (which predated *Goldsmith*) did not allege the City had a policy, custom, or practice of failing to train officers to authenticate ATES evidence in the manner found to be adequate in *Goldsmith*. Plaintiffs had the right, in a trial of the

14

citation itself, of presenting evidence to rebut statutory presumptions of authenticity of the ATES evidence.  (*People v. Rekte* (2015) 232 Cal.App.4th 1237, 1244-1246.)

The only claims in the Complaint remaining after *Goldsmith* are the equal protection claim based on disparate impact, Macias's claim under section 1983 for malicious prosecution, and claims based on the City's ATES-incorporated strobe technology.  Plaintiffs have not sought leave to amend.  We next analyze each of these claims.

## III.

### Equal Protection

Plaintiffs appear to assert they suffered equal protection violations in two ways.  First, they claim the ATES used by the City violates the requirement that a traffic citation may be issued only if the violation was committed in the presence of a police officer.  *Goldsmith* resolves that claim against them.

Second, Jaquez, who is Hispanic, alleged she was denied equal protection "because of her financial condition" and "potentially her ethnicity."  She alleged the City's policy, custom, or practice, though not targeting the elderly, Hispanics, and people of limited incomes, "has the effect of unduly impacting the elderly, Hispanics and people of limited incomes, generally unable to retain counsel to aggressively represent them because of those characteristics."  Such disparate impact alone is insufficient to constitute denial of equal protection.  "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact."  (*Arlington Heights v. Metropolitan Housing Corp.* (1977) 429 U.S. 252, 264-265.)  A law, facially neutral but having a disparate impact, violates equal protection only if it has a discriminatory purpose.  (*Washington v. Davis* (1976) 426 U.S. 229, 239, 242.)  Absent proof of discriminatory purpose, official action does not violate the Fourteenth Amendment to the United States Constitution "*solely* because it has a racially disparate impact." (*Washington v. Davis*, *supra*, at p. 239.)

15

Vehicle Code sections 21453 and 21455.5, and the City's alleged policy, custom, or practice in enforcing traffic citations resulting from the ATES, are facially neutral. Jaquez did not allege the Vehicle Code sections or the City's custom, policy, or practice has a discriminatory purpose.

Challenging a traffic citation issued based on an ATES might disproportionately affect the poor, but that would be true of challenging any traffic citation.[1] Because ATES evidence does not constitute hearsay and does not violate rights under the confrontation clause (*Goldsmith*, *supra*, 59 Cal.4th at pp. 273-274), use of ATES and ATES-generated evidence to issue a traffic citation does not render the citation invalid. If a defendant believes he or she did not commit the traffic violation charged, then the defendant must challenge the citation in court, which is the case with any traffic citation. When the defendant challenges a traffic citation that was issued based on ATES-generated evidence, the prosecution bears the burden of properly authenticating the evidence in accordance with *Goldsmith* and, as in any criminal prosecution, bears the burden of proof.

In addition, financial need alone does not identify a suspect class for equal protection purposes. (*Harris v. McRae* (1980) 448 U.S. 297, 323; *Maher v. Roe* (1977) 432 U.S. 464, 471; *San Antonio School District v. Rodriguez* (1973) 411 U.S. 1, 29 ["wealth discrimination alone [does not] provide[] an adequate basis for invoking strict scrutiny"].) Accordingly, even if Vehicle Code sections 21453 and 21455.5, and the City's alleged policy, custom, or practice in enforcing traffic citations resulting from the ATES, disproportionately affected the poor, the applicable standard is rational relationship. (*Ortwein v. Schwab* (1973) 410 U.S. 656, 660.) Plaintiffs do not contend

---

[1] Plaintiffs do not contend any of them had a right to appointed counsel. The right to counsel does not apply to traffic offenses for which there is no risk of imprisonment and only a monetary fine will be imposed. (*Scott v. Illinois* (1979) 440 U.S. 367, 373-374; *In re Kevin G.* (1985) 40 Cal.3d 644, 648.) Penal Code section 19.6 states that a person charged with an infraction does not have a right to appointed counsel.

16

section 21455.5 or the City's ATES does not bear a rational relationship to a legitimate state purpose. (See *In re Smith* (2008) 42 Cal.4th 1251, 1262-1263.)

## IV.

## Malicious Prosecution

Macias alone asserted a cause of action under section 1983 based on malicious prosecution. He alleged he was prosecuted without probable cause and was denied equal protection because the City's law enforcement officers ignored the requirements of Penal Code section 836, subdivision (a) that a citation may be issued only if the infraction is committed in the presence of an officer.

Macias's section 1983 cause of action for malicious prosecution fails for two reasons. First, "[m]alicious prosecution, by itself, does not constitute a due process violation; to prevail [the plaintiff] must show that the defendants prosecuted [him or] her with malice and without probable cause, and that they did so for the purpose of denying [him or] her equal protection or another specific constitutional right." (*Freeman v. City of Santa Ana* (9th Cir. 1995) 68 F.3d 1180, 1189.) Macias did not allege the City prosecuted him for the purpose of denying him equal protection or some other constitutional right.

Second, state law provides a remedy for malicious prosecution. "A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. [Citations.] The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the

17

procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." (*Zinermon v. Burch* (1990) 494 U.S. 113, 125-126, fn. omitted.)

Macias did not allege the City—or any governmental body—failed to provide constitutionally adequate process. Macias was entitled to, and had, a trial at which the prosecution bore the burden of proof. The prosecutorial body was required to call a witness to authenticate the ATES evidence, and Macias could, and did, challenge the authentication and the ATES evidence itself at trial. (See *People v. Rekte*, *supra*, 232 Cal.App.4th at pp. 1244-1246.) Macias could, and did, appeal the trial court's decision, and he obtained a reversal of the conviction. In support of its demurrer to the Complaint, the City requested judicial notice of the 10-page opinion of the San Bernardino County Superior Court Appellate Division in *People v. Macias* (2010, No. ACRAS 900155). The opinion demonstrates that Macias received constitutionally adequate process to challenge the Vehicle Code section 21453 citation. Finally, Macias did not allege he lacks statutory or common law tort remedies for any deprivation.

## V.

### Strobe Lights

The Complaint alleged the "camera technology & data service" used to monitor red light violations in the City "uses strobes adjacent to the signal indications" and "[s]uch strobes are banned by the Manual on Uniform Traffic Control Devices (MUTCD) 23 U.S.C. 209(d) and 23 U.S.C. 402(a) Section 4D.06." In the declaratory relief cause of action, Plaintiffs sought, among other things, a declaration that: "Use of strobe reliant system violate[s] the law as stated above . . . as they create distractions which interfere with the commerce clause mission and the mission statutorily set forth in the federal codes and regulations. [¶] . . . The use of the strobe based system should be declared by this court as a use of prohibited technology and all citations be ordered cancelled that are in process by the City, the Defendant notify all citizens affected and the

18

Department of Motor Vehicles that were notified of any conviction(s), that their prior convictions are being vacated or set aside as the corollary to a technology ban for use on the highways, is the citizen's right to be protected by any enforcement ban."

The MUTCD, *supra*, section 4D.06, available at <http://mutcd.fhwa. dot.gov/htm/2009/part4/part4d.htm> (as of Mar. 3, 2015), provides: "Strobes shall not be used within or adjacent to any signal indication." Title 23 Code of Federal Regulations part 655.603(a) (2015) provides: "The MUTCD approved by the Federal Highway Administrator is the national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel in accordance with 23 U.S.C. 109(d) and 402(a)." States and other federal agencies "are encouraged to adopt the National MUTCD in its entirety as their official Manual on Uniform Traffic Control Devices." (23 C.F.R. § 655.603(b)(2) (2015).)

Pursuant to Vehicle Code section 21400, subdivision (a)(1), the California Department of Transportation has adopted the California Manual on Uniform Traffic Control Devices (2014 ed.), available at <http://www.dot.ca.gov/hq/traffops/ engineering/mutcd> (as of Mar. 3, 2015) (CMUTCD), which includes the 2009 version of the MUTCD with some revisions. The CMUTCD, like the MUTCD, provides at section 4D.06 that "[s]trobes shall not be used within or adjacent to any signal indication." (CMUTCD, *supra*, § 4D.06 <http://www.dot.ca.gov/hq/traffops/ engineering/mutcd/pdf/camutcd2014/Chapter4D.pdf> [as of Mar. 3, 2015].)

The strobe lights regulated by the MUTCD and CMUTCD are not the relics of the 70's disco scene. Rather, "[s]trobe lights are used in pairs and flash in an alternate sequence to provide reference points for determining speed, distance, and movement." (*Marshall v. Burlington Northern, Inc.* (9th Cir. 1983) 720 F.2d 1149, 1151.)

We accept as true Plaintiffs' allegation the City's ATES "utilizes and did on the date of each plaintiff(s)' alleged violation, uses strobes adjacent to the signal indications which produced the plaintiffs' citations." (See *City of Dinuba v. County of*

19

*Tulare*, *supra*, 41 Cal.4th at p. 865.) The Complaint cannot, however, state any cause of action based on strobes because no private right of action exists to challenge a violation of the MUTCD. (*Miller v. U.S.* (10th Cir. 1983) 710 F.2d 656 (*Miller*).) The MUTCD is incorporated into 23 Code of Federal Regulations part 655.603 (2015). (*Peruta v. City of Hartford* (D.Conn., Aug. 24, 2012, No. 3:09-cv-1946 (VLB)) 2012 U.S.Dist. Lexis 120228, p. *48.) The authority for 23 Code of Federal Regulations part 655.603 (2015) is provided in 23 United States Code section 402(a), which is part of the Highway Safety Act of 1966, 23 United States Code section 401 et seq. (Highway Safety Act). Passed in 1966, the principal purpose of the Highway Safety Act was "enhanc[ing] the personal safety of the motoring public." (*Miller*, *supra*, at p. 667.) The Highway Safety Act does not explicitly or by implication create a private right of action against a governmental entity. (*Miller*, *supra*, at p. 667.)

As explained in *Miller*, *supra*, 710 F.2d at page 667: "From its language, there can be little doubt that the principal purpose of the [Highway] Safety Act was to enhance the personal safety of the motoring public. However, we decline to leap from such a proposition to the conclusion that by enactment of the [Highway] Safety Act 'Congress intended to create, either expressly or by implication, a private right of action.' [Citation.] Rather, it appears that Congress sought to regulate through the incentive of financial aid the previously unregulated activities of state highway departments for the protection and benefit of the separate and distinct classes of highway users, pedestrians, bicyclists and others mentioned in the statute. We note that the [Highway] Safety Act is phrased more as a general prohibition or command to a federal agency, rather than as an act focusing unmistakably on the benefitted class." (See *Peruta v. City of Hartford*, *supra*, 2012 U.S.Dist. Lexis 120228 at p. *48 ["there is no indication that Congress intended to create a private right of action to challenge a violation of MUTCD"]; *Morris v. U.S.* (W.D.Mo. 1984) 585 F.Supp. 1543, 1547-1548 [the plaintiffs could not maintain private cause of action under the Highway Safety Act for alleged violation of MUTCD].)

20

### DISPOSITION

The judgment is affirmed.  Respondent shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

21